UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NOBLE CAPITAL FUND MANAGEMENT, LLC, TXPLCFQ, LLC, and TXPLCFNQ, LLC, | § § § § § | |
| Plaintiffs, | § § | Civil No. 1:20-CV-1247-RP |
| v. | § § § | |
| US CAPITAL GLOBAL INVESTMENT MANAGEMENT LLC, f/k/a US CAPITAL INVESTMENT MANAGEMENT, LLC, | § § § § § | |
| Defendant. | § | |

**PLAINTIFFS' RESPONSE TO MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS OR ALTERNATIVELY MOTION TO DISMISS**

Plaintiffs respectfully submit this response to the motion to compel arbitration (Doc. 8) filed by Defendant US Capital Global Investment Management LLC and respectfully state:

**SUMMARY**

This case stems from misrepresentations USCGIM made in order to induce Plaintiffs to place investor funds with US Capital / Noble Capital Texas Real Estate Income Fund LP (the "Fund"), of which USCGIM was general partner, so that USCGIM could misuse and usurp those funds for the benefit of its principals. Plaintiffs first pursued their claims in arbitration, but that arbitration was terminated on motion of the Fund, which acts solely through its general partner USCGIM. In other words, USCGIM wants the Court to refer this dispute to an arbitration that does not exist. That alone is sufficient to deny USCGIM's motion.

Additionally, USCGIM's conduct—not only in the present lawsuit, but also throughout the history of the parties' dispute—demonstrates that USCGIM has waived any right to proceed in arbitration. Indeed, USCGIM's decision to seek and obtain termination of the arbitration prior to

a final merits hearing have left Plaintiffs with no choice but to seek redress in this Court. Moreover, USCGIM's motion to compel is yet another addition to its long line of improper tactics and gamesmanship. Requiring Plaintiffs to arbitrate claims that they have already tried to arbitrate—and have been forced to abandon because of USCGIM's own conduct—will severely prejudice Plaintiffs by causing additional unnecessary expenses and further delays.

Finally, the claims are not subject to arbitration for the fundamental reason that there is no agreement to arbitrate; the arbitration clauses in the agreements between the parties were procured by fraud and are thus invalid. For any of those reasons, the Court should deny USCGIM's motion.

## ARGUMENT AND AUTHORITIES

### I. The Arbitration Between The Parties Has Already Been "Had," Precluding Further Referral To Arbitration.

Plaintiffs asserted their claims in arbitration, and then USCGIM—fearing an imminent loss—unilaterally dismantled those proceedings. As a result, this matter now belongs in court.

Plaintiffs initiated a JAMS arbitration against USCGIM on January 15, 2019. *See* Doc. 5, Application for Preliminary Injunction at 12 (citing Doc. 5-1, Declaration of Chris Ragland ("Ragland Decl.") ¶ 29). The matter proceeded before JAMS for over *a year and a half*, involving multiple days of live testimony, hundreds of pages of briefing and exhibits, and numerous conferences and hearings before the arbitration panel. ***Two*** preliminary arbitration awards were issued (freezing investor dollars, among other things), and a final merits hearing had been set for January 2021. *See* Ragland Decl. ¶ 42.

The only reason why the JAMS proceedings were terminated prematurely was because the Fund—which can only operate through its general partner, USCGIM—sought that termination. *See* Ex. A, Motion for Payment of Fees or to Terminate Proceedings. Specifically, on August 11, 2020, the Fund moved for an order requiring *Noble* to pay fees that JAMS had assessed to the

Fund or else "terminat[ing] these proceedings" so that the Fund could "resume litigating its claims in federal court." *Id*. at 1.

Plaintiffs informed JAMS and counsel for all parties of their intent to "submit a response by August 31," which JAMS acknowledged and confirmed. Ex. B, Plaintiffs' Correspondence with JAMS at 1.[1] Nevertheless, at noon on August 31, 2020, before Plaintiffs had had the opportunity to submit their response to the Fund's motion, JAMS issued its ruling, terminating the proceedings. Ex. C, Correspondence from JAMS regarding ruling. On October 28, 2020, JAMS closed the arbitration. Ex. D, Letter closing arbitration.

In sum, the arbitration "has been had in accordance with the terms of" the parties' agreements. *See Tillman v. Tillman*, 825 F.3d 1069, 1074 (9th Cir. 2016) (concluding "arbitration was 'had' in the sense that the parties engaged in arbitration until the arbitrator terminated those proceedings" because one of the parties "could no longer pay the arbitrator's fee").[2] In *Tillman*, like here, the proceedings were terminated due to one of the parties' nonpayment of its fees. *Id*.[3] Because the arbitration had been "had," the District Court lifted the stay over the original judicial proceeding, and the Ninth Circuit affirmed, holding that the parties could proceed in court. *Id*. at 1074; *see also Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1294 (10th Cir. 2015) (after panel terminated proceedings due to party's "repeated refusal to pay the fees," court held "arbitration 'ha[d] been had in accordance with the terms of the agreement,' . . . removing the § 3

---

[1] That response would have pointed out that USCGIM, as the Fund's general partner, was liable for the Fund's arbitration fees but had elected not to pay them.

[2] Because this Court sits in diversity, Texas choice of law rules apply. *Grasso Enters., LLC v. CVS Health Corp.*, 143 F. Supp. 3d 530, 536 (W.D. Tex. 2015). Those principles provide that "[t]he law of the state chosen by the parties to govern their contractual rights and duties" applies. Restatement (Second) of Conflict of Laws § 187(2) (1971). Here, the MASA is governed by California law. The LPA is governed by Delaware law, which does not substantially differ.

[3] Unlike here, however, the party claiming inability to pay in *Tillman* had provided evidence of its financial condition. *Id*. at 1072.

requirement for the district court to stay the proceedings"). So too, here: the arbitration has concluded, and no basis exists to prevent litigation of this matter in court.

## II. USCGIM Has Waived Any Right To Arbitrate.

USCGIM waived any arbitration rights because it took actions that are inconsistent with those claimed rights, resulting in significant prejudice to Plaintiffs. USCGIM must now proceed in court.

"It is well established that agreements to submit disputes . . . to arbitrators, just like any other contract terms, may be waived." *Burton-Dixie Corp. v. Timothy McCarthy Const. Co.*, 436 F.2d 405, 407 (5th Cir. 1971) (citations omitted); *see also Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016). Waiver is established where (1) the party seeking arbitration had "knowledge of an existing right to compel arbitration;" (2) that party engaged in "acts inconsistent with that existing right;" and (3) "prejudice to the party opposing arbitration result[s] from such inconsistent acts." *Martin*, 829 F.3d at 1124.[4]

Whether an action "constitutes a waiver or abandonment of the arbitration agreement" "depends upon the facts of each case and usually must be determined by the trier of facts." *Burton-Dixie Corp.*, 436 F.2d at 408; *see also Freeman v. SmartPay Leasing, LLC*, 771 F. App'x 926, 932 (11th Cir. 2019); *Howard Hill, Inc. v. George A. Fuller Co.*, 473 F.2d 217, 218 (5th Cir. 1973). This inquiry is within the province of the courts, not the arbitrators. *Martin*, 829 F.3d at 1124.

### A. USCGIM engaged in acts inconsistent with its purported right to arbitration.

Even though USCGIM inserted the arbitration clauses in the parties' agreements, it actively sought—and achieved—the demise of the arbitration commenced by Plaintiffs once it became

---

[4] Here, USCGIM claims that it had knowledge of its purported right to compel arbitration, thus satisfying the first element.

**PLAINTIFFS' RESPONSE TO MOTION TO COMPEL ARBITRATION
AND STAY PROCEEDINGS OR ALTERNATIVELY MOTION TO DISMISS**   **PAGE 4**

clear that the panel would rule in Plaintiffs' favor. *See* Doc. 5 at 15-17. At USCGIM's direction, the Fund filed a lawsuit against Noble, then proceeded to interfere with the arbitration in order to gather information for its lawsuit. Ragland Decl. Ex. 8 at 9. But after the panel refused the Fund's requests to observe, and after **two awards** were issued detailing the pattern of USCGIM's mishandling of the Fund's assets, USCGIM and the Fund engineered the termination of the JAMS arbitration. *Id.* Moreover, whereas Noble was prepared to oppose the Fund's motion and seek, at the very least, sufficient evidence of the financial condition of the Fund and its general partner, USCGIM did **nothing** to salvage the arbitration. It did not cover the Fund's fees, nor did it protest when JAMS closed the entire proceedings shortly before the scheduled merits hearing. *See* Ragland Decl. Ex. 11.

Faced with a similar refusal by a party to an arbitration to pay its arbitration fee, the Eleventh Circuit in *Freeman* held that the party "acted inconsistently with its contractual right to arbitrate when it refused to pay the initial filing fee" and "therefore waived its right to arbitration." 771 F. App'x at 933. Indeed, courts routinely view the refusal to pay arbitration fees as indicative of waiver, or else construe it as a breach or default under the arbitration agreement that likewise forecloses the right to arbitrate. *See Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1201 (9th Cir. 2003) (party "had a fair chance to proceed with arbitration, but . . . scuttled that prospect by its non-payment of costs, impending the arbitration to the point where the arbitrator cancelled the arbitration and declared [party] in default").[5] In sum, "[i]n these circumstances, [courts] hold that § 4 of the FAA does not compel a district court to return the parties once more to arbitration." *Id.*

---

[5] *See also Steffanie A. v. Gold Club Tampa, Inc.*, No. 8:19-cv-3097-T-33TGW, 2020 WL 4201948 (M.D. Fla. July 22, 2020) ("Defendants' repeated refusal to pay the AAA initial filing fee in this case constituted both a waiver of the right to arbitrate and a breach of the parties' agreement to arbitrate."); *Bruzda v. Sonic Auto.*, No. 16-CV-02413-MEH, 2017 WL 5178967, at *5 (D. Colo. Jan. 23, 2017) ("Defendant forfeited its ability to enforce the arbitration agreement when the AAA administratively closed the parties' case because of Defendant's failure to pay fees despite multiple payment notices.").

Here, USCGIM's conduct went beyond dissipating the arbitration between the parties. Once Plaintiffs were left with no choice but to file suit in court, USCGIM evaded service for ***a month***, *see* Doc. 1-3 at 500-24, only to then remove this case to federal court, and, nearly a month later, seek the dismissal and transfer of the proceedings. Thus, while Plaintiffs have attempted to litigate this matter in state and federal court since November 24, 2020 (including by seeking temporary injunctive relief in state court), USCGIM waited until January 20, 2021 to seek to compel arbitration. *See* Doc. 1-3 at 2; Doc. 8. Far less has been deemed sufficient to waive the right to arbitrate. *See Plows v. Rockwell Collins, Inc.*, 812 F. Supp. 2d 1063, 1065-68 (C.D. Cal. 2011) (finding waiver where defendant removed case to federal court, sought transfer of venue, and participated in scheduling conferences and discovery). That USCGIM now attempts to invoke an arbitration clause is of no consequence: "[a] statement by a party that it has a right to arbitration in pleadings or motions is not enough to defeat a claim of waiver." *Martin*, 829 F.3d at 1125.

**B.     Plaintiffs will suffer severe prejudice if required to arbitrate their claims.**

USCGIM's request to arbitrate is also an improper gamesmanship tactic that will greatly prejudice Plaintiffs. "Prejudice in the context of arbitration waiver refers to delay, expense, and damage to a party's legal position." *In re Mirant Corp.*, 613 F.3d 584, 591 (5th Cir. 2010) (quoting *Nicholas v. KBR, Inc.*, 565 F.3d 904, 910 (5th Cir. 2009)). Requiring Plaintiffs to arbitrate their claims will result in each of these various forms of prejudice.

USCGIM's actions have already resulted in significant delays and expenses. Plaintiffs brought their claims before a JAMS arbitration panel—incurring arbitration fees that would not have existed in court proceedings—solely because USCGIM had insisted on arbitration and had fraudulently procured the arbitration provisions found in the LPA and MASA. Once the arbitration was initiated, USCGIM created additional delays (resulting in greater expenses) through its evasive conduct and its failure to abide by numerous instructions set forth by the arbitrators. *See,*

*e.g.*, Ragland Decl. Exs. 5-7. USCGIM then orchestrated the Fund's intervention into those proceedings, which again delayed the final resolution of the matter.

Although JAMS issued two awards in the course of the arbitration (which remain valid and binding), USCGIM's conduct effectively prevented Plaintiffs from obtaining a final ruling on the merits of their claims. USCGIM is already responsible for a delay of over two years and for all the legal expenses and investor losses that have been incurred during that timeframe. It is because of USCGIM's conduct that Plaintiffs found themselves forced to pursue this action in court. USCGIM is thus also responsible for the delays and expenses associated with the present judicial proceedings, which include *a month's* worth of Plaintiffs' diligent attempts to serve USCGIM— all while USCGIM evaded service, refused to participate in state court hearings on Plaintiffs' request for emergency relief (while knowing that they were scheduled), and instead planned the removal of this action to federal court. Doc. 1-3 at 500-24; *see also In re Mirant Corp.*, 613 F.3d 584, 591-92 (5th Cir. 2010) (affirming finding of waiver and concluding that delay in resolution of the claims and "legal expenses [incurred] as a result of [movant's] use of the federal court system" "support a finding of prejudice"). Requiring Plaintiffs to arbitrate their claims now—after they have already exhausted all options in the arbitral forum and have expended tens of thousands of dollars in attempting to bring suit in court—will cause delays and expenses that are not only prejudicial, but also prohibitive.

### III. Plaintiffs Cannot Be Compelled To Arbitrate Because The Arbitration Clauses Were Fraudulently Procured.

Even if the arbitration had not been "had," and even if USCGIM had not waived its alleged right to arbitrate, referring this matter to arbitration would still be improper because the specific arbitration clauses within the LPA and MASA were procured by fraud. The law is clear that "ordinary contract principles prohibit parties from engaging in fraud to induce other parties to sign

agreements." *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 538 (5th Cir. 2003). Arbitration clauses are thus invalid if they were procured by a party who "misrepresented the facts [or] acted in less than good faith." *Id.* (quoting *S. Nat'l Bank v. Crateo*, 458 F.2d 688, 692 (5th Cir. 1972)).

Here, the arbitration clauses (including the specific phrases within those clauses that delegate certain authority to the arbitrators) were induced through the misrepresentations of USCGIM and its principals. *See* Doc. 5 at 12; Ragland Decl. ¶ 29 (explaining that "[t]he sole reason why Plaintiffs brought their claims in an arbitration forum [in the original JAMS proceeding] was because USCGIM, along with its principals and other related entities, had induced Noble to agree to confidential arbitration provisions."). Because the arbitration clauses (including any phrases within those clauses delegating authority to the arbitrators) were procured by fraud, they are invalid and do not support referring this matter to arbitration. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967) ("[I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate— the federal court may proceed to adjudicate it").[6]

## IV.   USCGIM's Remaining Attempts To Dispose Of This Matter Are Meritless.

USCGIM raises—but does not support with argument or authority—several other grounds for either dismissing or transferring this matter, each of which lacks merit.

USCGIM's arguments pursuant to Rules 12(b)(1), 12(b)(3), and 12(b)(6) all hinge on its request to compel arbitration. Mot. at 11-12. Because there is no basis to compel arbitration, those

---

[6] USCGIM correctly notes that Judge Yeakel rejected this argument in *Noble Capital Grp., LLC v. US Capital Partners, Inc.*, No. A-19-CV-1255-LY, Dkt. 14, 19 (W.D. Tex.), *appeal filed*, No. 20-50721 (5th Cir. Aug. 31, 2020). That case involved fraud claims against USCGIM's principals. Judge Yeakel entered an order compelling arbitration of those claims, rejecting Plaintiff's argument that fraudulent inducement of the arbitration clauses precluded their enforcement. The pending appeal turns on the enforceability of the arbitration clauses. Importantly, Judge Yeakel's order was entered *before* USCGIM caused the termination of the JAMS proceedings, such that he did not address the first two arguments made in this response.

arguments fail.  Nor does Rule 12(b)(7) provide a ground for dismissal.  The Fund is not an indispensable party, as it is *USCGIM* that controls (and currently mismanages) the assets at issue.

Plaintiffs have more than satisfied the requirements of Rule 9(b).  USCGIM's misrepresentations are not only set forth in detail and placed in context, but they are supported by nearly 500 pages of evidence.  *See* Doc. 1-3 at 2-498.

Finally, USCGIM's request to transfer venue is baseless.  USCGIM represents to the Court that "the contracts between the parties have valid and enforceable forum selection clauses which specifies [sic] California as the proper venue."  Mot. at 13.  But neither contract says anything about litigating this matter in California.  The contracts do specify California as the site *for the arbitration*, but the arbitration is over.  The only contractual provisions that speak to which *court* is proper are the LPA's consideration of "provisional remedies in aid of arbitration from a court of appropriate jurisdiction in San Francisco County, California," (Mot. at 8 (quoting LPA)), and the MASA's consideration of "provisional injunctive relief from any court having jurisdiction."  Mot. at 9-10 (quoting MASA).  Neither provision applies, and venue is proper in this Court under the general venue rules.

## CONCLUSION

USCGIM's request to send this matter to an arbitration that has concluded is supported by neither the law nor the facts.  It should be denied.

Respectfully submitted,

/s/ Jason M. Hopkins
Jason S. Lewis
Texas Bar No. 24007551
Jason.Lewis@DLAPiper.com
Jason M. Hopkins
Texas Bar No. 24059969
Jason.Hopkins@DLAPiper.com
Marina Stefanova
Texas Bar No. 24093200
Marina.Stefanova@DLAPiper.com
**DLA Piper LLP (US)**
1900 N. Pearl Street
Suite 2200
Dallas, Texas 75201
214-743-4546 – telephone
972-813-6267 – facsimile

**ATTORNEYS FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

I certify that on January 22, 2021, a copy of the foregoing document was served on all attorneys of record via the Court's electronic filing system.

/s/ Jason M. Hopkins
Jason M. Hopkins
