IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NOBLE CAPITAL FUND MANAGEMENT LLC, TXPLCFQ, LLC and TXPLCFNQ, LLC, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:20-CV-1247-RP |
| U.S CAPITAL GLOBAL INVESTMENT MANAGEMENT, LLC, f/k/a U.S. CAPITAL INVESTMENT MANAGEMENT, LLC, | § § § § § § | |
| Defendant. | § § | |

# ORDER

Before the Court is Plaintiffs Noble Capital Fund Management, LLC ("Noble") and TXPLCFQ, LLC and TXPLCFNQ, LLC's (the "Feeder Funds," and, together with Noble, "Plaintiffs") Motion for a Preliminary Injunction, (Dkt. 5). Defendant U.S. Capital Global Investment Management LLC f/k/a U.S. Capital Investment Management, LLC ("US Capital") filed responsive briefing, (Dkts. 10, 14-1, 16-1). Having considered the briefing, the arguments made at the hearing, the evidence, and the relevant law, the Court will deny the motion.

## I. BACKGROUND

Noble is a private lending institution that primarily make loans to residential real estate developers in Texas. (Compl., Dkt. 1-3, at 4–5). US Capital is part of a conglomerate of companies that serve as investment advisors and registered broker dealers. (*Id.* at 5–6). In 2017, the parties agreed to create a limited partnership investment fund called the US Capital/Noble Capital Texas Real Estate Income Fund LP (the "Fund") for the purpose of making investments in private lending projects in Texas. (Dkt. 1-3, at 3).

To create the Fund, Noble investors placed $25 million in the feeder funds TXPLCFQ, LLC and TXPLCFNQ, LLC ("Feeder Funds"), and US Capital promised to supplement the funds with money from "significant institutional investors." (PI Mot., Dkt. 5, at 5). The parties then established the Fund through the Limited Partnership Agreement ("LPA") signed between U.S. Capital and the Feeder Funds. (Dkt. 1-3, at 6). Under the LPA, US Capital became the general partner of the Fund. (*Id.*). US Capital's main responsibilities as general partner were to raise capital and ensure regulatory compliance. (*Id.* at 8). Noble became responsible for managing the Fund's investments pursuant to the Management Advisory Services Agreement ("MASA") between Noble, the Fund, and US Capital. (*Id.* at 6).

Noble alleges that despite its promise "to deliver hundreds of millions of investment dollars," US Capital "knew it could not deliver" and promised to raise money for the fund "to induce Plaintiffs to place $25 million worth of investor dollars under [US Capital]'s control, where US Capital and its principals could extract fees from it." (PI Mot., Dkt. 5, at 5). In the three years since the Funds creation, Noble alleges that US Capital has not raised any money for the fund and has charged Noble hundreds of thousands of dollars in unreasonable fees that US Capital claimed were for regulatory compliance measures and for finding investors. (Dkt. 1-3, at 7–12). Noble also alleges that US Capital has been sued for the same conduct six times around the country and attached four of those lawsuits to its preliminary injunction motion. (Dkt. 5, at 10–12; Lawsuits, Dkts. 5-2, 5-7).

## II. PROCEDURAL HISTORY

In January 2019, Noble initiated a JAMS arbitration against US Capital, pursuant the arbitration clause in the MASA.[1] The JAMS panel issued an injunction and a partial award before the arbitration was terminated because of the Fund's inability to pay the arbitration fees. (Dkt. 5, at 15–

---

[1] JAMS Arbitration, No. 1100104841.

19). Noble alleges that US Capital took retaliatory actions against the Fund in response to the arbitration and "orchestrated" the termination of the arbitration when it knew it would lose at the final merits stage. (Dkt. 5, 12–19). In their partial final award, the panel noted that Noble had already liquidated the majority of the funds, leaving only $500,000 in the Fund. (*See* JAMS Partial Final Award, Dkt. 8-8, at 5). On the same day JAMS terminated the arbitration, US Capital removed the remaining $500,000 from the Fund. (Sweeney Decl., Dkt. 16-1, at 1; Bank Statement, Dkt. 16-1, at 2).

In May 2019, the Fund filed a lawsuit in the Northern District of California against Noble and Noble Capital Group LLC (Noble is the subsidiary/affiliate of Noble Capital Group), alleging fraud, false advertising, unfair competition, breach of contract, conversion, unjust enrichment, intentional interference with contractual relations, Civil RICO violations, and demanding an accounting.[2] That court entered a stay, and referred the case to arbitration to be consolidated with the then-existing JAMS arbitration.

In late 2019, Noble filed its first lawsuit in this district against US Capital and its principals Jeffrey Sweeney, Charles Towle, and Patrick Steele, alleging fraud and fraudulent inducement, and conspiracy.[3] There, United States District Court Judge Yeakel rejected Noble's arguments that the arbitration provisions in the LPA and MASA were fraudulently procured and granted Defendants' motion to compel arbitration, dismissing the case on July 31, 2020.[4] In late February 2020, US Capital Group Securities initiated a Financial Industry Regulatory Authority ("FINRA") arbitration proceeding against Noble Capital Group, Noble, and two other entities.[5]

---

[2] *US Capital/Noble Cap. Tex. Real Estate Income Fund v. Newman*, No. 3:19-cv-2750 (N.D. Cal. May 20, 2019). This case remains stayed.
[3] *Noble Capital Group LLC, et al. v. US Capital Partners, et al.*, No. 1:19-cv-01255 (W. D. Tex. 2020).
[4] *See id.* at Dkts. 30‑31.
[5] FINRA Case No. 20-00631.

Noble first filed the instant case in Travis County District Court on November 24, 2020, bringing claims of fraud, conversion, breach of fiduciary duty, breach of contract, and tortious interference. (*See* State Court Pet., Dkt. 1-3). That court held a preliminary injunction hearing, which US Capital did not attend. (Dkt. 5, at 2–3). US Capital then removed this case on December 24, 2020. (Not. Removal, Dkt. 1). Noble filed its preliminary injunction motion on January 13, 2021. (Dkt. 5).

### III. DISCUSSION

A preliminary injunction is an extraordinary remedy, and the decision to grant such relief is to be treated as the exception rather than the rule. *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking injunctive relief carries the burden of persuasion on all four requirements. *PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005). A movant cannot be granted a preliminary injunction unless it can establish that it will suffer irreparable harm without an injunction. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001). Here, the Court's analysis begins and ends with its finding that Noble has not met its burden to show that it will be irreparably harmed in the absence of an injunction.

In its motion, Noble argues that without an injunction it will face irreparable harm because it "stands to lose not only the investments and payments made to the Fund and other fees paid to [US Capital], but also the returns on those investments and the other pecuniary gains and intangible benefits that those returns may have offered." (Dkt. 5, at 25). Noble further asserts that US Capital's interference with Noble's client relationships represents irreparable harm because it harms "Noble's goodwill and reputation and its ability to maintain client relationships are vital to its effective

4

management of investments and funds." (*Id.*). US Capital responds that Noble has not shown a likelihood of irreparable harm because this is a "dispute about financial transactions verified by business records," and as such the "dollar amounts are all finite numbers." (Dkt. 9, at 4–5). US Capital also argues that Noble has failed to establish it has no remedy at law since Noble's request is based on a "potential future threat of [US Capital] engaging in conduct that Plaintiff characterizes as breach of the [LPA] and other alleged duties under law." (*Id.* at 5).

First, the Court rejects Noble's contention that its "loss of investments and payments made to the Fund and other fees to [U.S. Capital]" constitutes impending irreparable harm. (Dkt. 5, at 25). Noble contends that the amounts in controversy are not "presently ascertainable" because they include "returns on those investments and other pecuniary gains." (*Id.*). However, returns on investments and other pecuniary gains are precisely the type of injury that can be calculated and redressed by money damages at a later time. *Danden Petroleum, Inc. v. N. Nat. Gas Co.*, 615 F. Supp. 1093, 1099 (N.D. Tex. 1985) ("Injuries which can be compensated by money damages at a later time are not irreparable and do not warrant the extraordinary remedy of an injunction.").

Noble further argues that an injunction is necessary to "prevent U.S. Capital from usurping Fund assets," yet no assets remain in the fund and thus this harm has already occurred. (Bank Statement, Dkt. 16-1, at 2); *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.") (cleaned up); *El Bey v. Dominguez*, 2020 WL 7658088, at *8 (N.D. Tex. Nov. 23, 2020). ("[A]lleged *past* injuries does not constitute the type of ongoing or probable future injuries justifying preliminary injunction.").

Second, while Noble is correct that the threat of damage to client relationships may constitute irreparable harm, the cases Noble cites in support of this point all dealt with ongoing

5

violations of non-competition and/or confidentiality agreements by former employees. (*See* Dkt. 5, at 26) (citing *Henson Patriot Ltd. Co. v. Medina*, No. SA-14-CV-534-XR, 2014 WL 4546973, at *5 (W.D. Tex. Sept. 11, 2014); *J.M. Fields of Anderson, Inc. v. Kroger Co.*, 310 F.2d 562, 564 (5th Cir. 1962; *Pfeiffer v. Ajamie PLLC*, 469 F. Supp. 3d 752, 765 (S.D. Tex. 2019); *Travelhost, Inc. v. Modglin*, No. 3:11-CV-0456-G, 2012 WL 2049321, at *5 (N.D. Tex. June 6, 2012)). Here, in contrast, Noble alleges that US Capital has already "succeeded in disrupting Noble's client relationships, as certain of Noble's clients (who are also limited partners in the Feeder Funds) have complained about the management of their investment, and some have cut ties with Noble." (Dkt. 5, at 26). While Noble is correct that "it is difficult to assign a dollar value" to the loss of a client, Noble's allegation that is has lost clients due to US Capital's mismanagement of the Fund once again presents a past harm that belies its assertion that "future injury is certainly impending." *Aransas Project v. Shaw*, 775 F.3d 641, 664 (5th Cir. 2014). Indeed, since there is no longer any more money in the Fund for US Capital to mismanage, Noble is not facing an impending threat of losing clients on this basis. (*See* Bank Statement, Dkt. 16-1, at 2).

Because Noble's harm has already occurred and can be remedied by money damages, it has not carried its burden to show that it is likely to be irreparably harmed in the absence of a preliminary injunction. A preliminary injunction is not warranted.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Noble's motion, (Dkt. 5), is **DENIED**.

**SIGNED** on February 12, 2021.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

6