# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| NOBLE CAPTIAL FUND MANAGEMENT, LLC, TXPLCFQ, LLC, and TXPLCFNQ, LLC, *Plaintiffs* | § § § § | |
| **v.** | § § | **Case No.  1:20-CV-1247-RP** |
| US CAPITAL GLOBAL INVESTMENT MANAGEMENT, LLC *f/k/a* US CAPITAL INVESTMENT MANAGEMENT, LLC, *Defendant* | § § § § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

### TO: THE HONORABLE ROBERT PITMAN
### UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Motion to Compel Arbitration and Stay Proceedings, or Alternatively, Motion to Dismiss, or Alternatively, Motion to Transfer Venue, filed January 20, 2021 (Dkt. 8), and Plaintiffs' Response, filed January 22, 2021 (Dkt. 12). The District Court referred the motion to the undersigned Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

## I.  Background

Plaintiff Noble Capital Fund Management, LLC ("Noble") is a private lender to residential real estate developers in Texas. Defendant US Capital Global Investment Management, LLC f/k/a US Investment Management, LLC ("US Capital") is part of a conglomerate of investment advisors and registered broker dealers. In 2017, Noble and US Capital agreed to create a limited partnership investment fund called the US Capital/Noble Capital Texas Real Estate Income Fund LP ("Fund") for the purpose of investing in private lending projects in Texas.

1

To create the Fund, Noble investors placed $25 million in the feeder funds TXPLCFQ, LLC and TXPLCFNQ, LLC ("Feeder Funds"), and US Capital promised to supplement the Fund with money from "significant institutional investors." Plaintiff's Original Petition, Exh. A to Dkt. 1-3, ¶ 18 ("Complaint"). The parties then established the Fund through the Limited Partnership Agreement ("LPA") between U.S. Capital and the Feeder Funds. Under the LPA, US Capital was the general partner of the Fund. Dkt. 8-6. US Capital's main responsibilities as general partner were to raise capital and ensure regulatory compliance. Noble was responsible for managing the Fund's investments pursuant to the Management Advisory Services Agreement ("MASA") between Noble, the Fund, and US Capital. Dkt. 8-7. The LPA and MASA both contain arbitration clauses requiring the parties to arbitrate any claims related to the agreement. Dkts. 8-6 at 45, 8-7 at 5 ("Arbitration Clauses"). Noble claims that US Capital fraudulently induced it to agree to the Arbitration Clauses. Complaint ¶ 43.

Noble alleges that despite its promise "to deliver hundreds of millions of investment dollars," US Capital "knew it could not deliver" and promised to raise money for the Fund "to induce Plaintiffs to place $25 million worth of investor dollars under [US Capital]'s control, where US Capital and its principals could extract fees from it." *Id.* ¶ 20. Noble alleges that US Capital has not raised any money for the Fund and has charged Noble hundreds of thousands of dollars in unreasonable fees that US Capital claimed were for regulatory compliance measures and finding investors. Noble also alleges that US Capital attempted to take over Noble's private lending network and interfere with its client relationships. Noble alleges that US Capital used the Fund "as a vehicle to harass" Noble and "further siphon off investor dollars." Dkt. 1-3 ¶ 50. Noble further alleges that US Capital has engaged in a pattern of fraud with other companies and has been sued six times, "all with virtually identical allegations." *Id.* ¶ 42.

On January 15, 2019, Noble and the Feeder Funds ("Plaintiffs") initiated a JAMS arbitration against US Capital in San Francisco, California. Dkt. 1-3, JAMS Case No. 1100104841 ("Arbitration"). In the Arbitration Demand, Plaintiffs alleged that US Capital's goal from inception was to take over Noble's private lending business by replicating its investment model, gaining access to its client base, driving a wedge between those clients and Noble, and ultimately forcing out Noble as manager of the Fund's loan portfolio. Dkt. 5-1 at 118. The Arbitration Demand included claims for breach of contract, breach of fiduciary duty, and conversion, and sought monetary damages (including punitive damages) and an award of attorney fees and costs. *Id.*

On January 22, 2019, Plaintiffs filed an emergency motion with the arbitrator alleging that US Capital had engaged in misconduct and threats to Plaintiffs after the Arbitration Demand was filed. Specifically, Plaintiffs alleged that US Capital threatened to stop funding loans and to notify the limited partners (Noble's clients) that their capital was at risk because of Noble's viability as a going concern; stopped paying Noble's advisory fees under the MASA for operating the Fund's loan portfolio, even though Noble continued to do the work; revoked Noble's view-only access to the Fund's bank accounts; froze $500,000 in Fund assets, which then was unavailable for lending; and demanded proprietary client information. *Id.*

Plaintiffs also complained about the role of the Fund in the Arbitration proceeding. The Fund, which acts by and through its general partner US Capital, was not a party to the Arbitration and, therefore, was not bound by the arbitrator's ruling and orders. However, two law firms appeared on behalf of the Fund at various points in the Arbitration, one threatening litigation against the Feeder Funds and opposing the arbitrator's injunction on parallel litigation, the other seeking to observe and gather information. *Id.*

On July 10, 2019, the emergency arbitrator granted and denied in part Plaintiffs' Rule 2(c) Emergency Relief Request. Dkt. 1-3 at 134-95. In the Emergency Arbitrator's Award, the arbitrator found that Plaintiffs had established a likelihood of prevailing on the merits of their breach of contract and fraud claims. *Id.* at 170-72. The arbitrator further granted Plaintiffs' request to enjoin US Capital "from using or causing the Fund to use Partnership capital to pay for all or any portion of" (1) the suit filed May 20, 2019 by the Fund against Noble,[1] and (2) the investigation that counsel for the Fund represented had formed the basis for the suit. *Id.* at 176. The arbitrator also granted Plaintiffs' requests to order US Capital to:

- provide a sworn statement identifying all expenditures of Partnership capital from Fund inception to present;
- produce copies of all agreements between the Fund and third parties;
- not communicate with Fund investors and borrowers; and
- provide Noble access to bank accounts and other financial information.

*Id.* at 184-87. Finally, the arbitrator determined that Plaintiffs were the prevailing parties and should be awarded costs and expenses. *Id.* at 190. The arbitrator's rulings were to remain in effect "until further order of the Emergency Arbitrator or the Merits Arbitrators." *Id.* at 152.

On September 19-20, 2019, the JAMS Panel held a hearing on the parties' cross-motions for preliminary injunctions and motions to modify the previous Rule 2 Arbitrator's Award. Dkt. 1-3 at 198. The night before the hearing, "[t]he Panel was advised that within the last week before the Arbitration hearing was to commence on September 19, 2019, Noble Capital had liquidated the

---

[1] On May 20, 2019, the Fund filed suit in the Northern District of California against Noble, alleging fraud, false advertising, unfair competition, breach of contract, conversion, unjust enrichment, intentional interference with contractual relations, and Civil RICO violations, and demanding an accounting. *US Capital/Noble Cap. Tex. Real Estate Income Fund v. Newman*, No. 3:19-cv-2750 (N.D. Cal. May 20, 2019). That court entered a stay and referred the case to arbitration, to be consolidated with the then-existing JAMS arbitration. After the arbitration was terminated and the stay lifted, US Capital filed a Notice of Voluntary Dismissal under Fed. R. Civ. P. 41(a)(1)(A). *Id.* at Dkt. 35. On April 26, 2021, the district court dismissed the case without prejudice. *Id.* at Dkt. 36.

investments of the Fund participants and either repaid their capital contributions (including all interest due through 2018) or reinvested it with other Noble funds." *Id.* As a result, "the only remaining funds with Noble Capital were approximately $500.00." *Id.*

On October 1, 2019, the JAMS Panel issued its Partial Final Award on the motions, in which the Panel:

1. granted US Capital's request to order Noble to provide all necessary items to US Capital's law firm so that an audit for 2018 could be completed;

2. granted US Capital's request that a complete accounting of Noble's liquidation of assets be performed;

3. denied US Capital's request that Noble return all monies traceable to the liquidation and held by Noble Capital, but ordered that all such sums be placed in a separate blocked account;

4. affirmed the emergency arbitrator's order prohibiting US Capital from using the Fund for litigation or investigation purposes;

5. granted Plaintiffs' request for an immediate freeze on the monies held by the Fund (some $500,000); and

6. granted Plaintiffs' request to enjoin US Capital "from spending or otherwise disposing of partnership capital absent further order from the Panel or written stipulation between counsel."

*Id.* at 201-04. The Panel also found that the "recent liquidation of the Fund by Noble Capital establishes that the Fund will likely prevail at trial on its Breach of Contract and Conversion causes of action." *Id.* at 201.[2]

On August 11, 2020, the Fund, as a third party to the Arbitration, filed a Motion for an Order Requiring Noble to Pay the Fund's Portion of JAMS Fees and Expenses, or to Terminate Proceedings Between the Fund and the Noble Parties. Dkt. 12-1 at 3. The Fund claimed that it could not pay its portion of the JAMS fees and expenses. *Id.* at 4. US Capital argued that under the

---

[2] On February 21, 2020, US Capital filed a separate Financial Industry Regulatory Authority ("FINRA") arbitration proceeding against Noble Capital Group, Noble, and two other entities. Dkt. 13 at 3 (citing FINRA Case No. 20-00631). The parties have not notified the Court of the status of the FINRA arbitration and have not discussed it in the instant Motion to Compel Arbitration or Response.

law and JAMS Rules, if "a claimant is unable to bear the cost of arbitration fees, either the respondent(s) may pay the claimant's portion of the fees, or the claimant shall be permitted to resume litigating its claims in court" and the arbitration terminated. *Id.* The Fund also requested a hearing on the motion. Dkt. 12-2 at 7.

Plaintiffs contend that "[t]he Fund provided no evidence of its alleged inability to pay, nor did it explain why [US Capital], as the Fund's general partner, could not cover its expenses." Complaint ¶ 57. On August 26, 2020 at 11:45 a.m., Plaintiffs notified the JAMS Panel via email that they would submit a response to US Capital's Motion for Fees by August 31, 2020. Dkt. 12-2 at 2. A few hours later, at 4:14 p.m., the Case Manager responded to Plaintiffs' email by stating "Noted. Thank you." *Id.* However, a few hours earlier, at 1:02 p.m., the JAMS Case Manager notified all counsel of record that: "The Panel has decided to issue a decision on the Motion on August 31st. A hearing is not necessary at this time. If there is an opposition or response please submit." *Id.* at 3. Plaintiffs argue that they planned to file a response by the end of the day on August 31 opposing the Motion on the basis that US Capital, as the Fund's general partner, was liable for the Fund's arbitration fees and expenses. Dkt. 12 at 3. Plaintiffs contend that before they had the opportunity to submit their response, at noon on August 31, 2020, the JAMS Panel issued its Order granting US Capital's Motion. The Order provided as follows:

> The Motion was received on August 19, 2020, and no response has been received. If no response is received by August 28, 2020, the following order will be effective.
>
> Pursuant to JAMS Rule 6(c) when a party has failed to pay fees or expenses in full JAMS may order suspension or termination of the proceedings.
>
> The deposit JAMS billed for the arbitration to the Noble Capital Fund on November 2, 2019, February 18, 2020 and July 2, 2020 have not been paid. None of the other parties have advanced said fees. Therefore, pursuant to JAMS Rule 6(c) the Panel orders the termination of the proceedings.

Dkt. 1-3 at 212. The same day, US Capital removed the remaining $500,000 from the Fund.

Dkt. 16-1 at 1-3. The JAMS Panel officially closed the arbitration on October 26, 2020. Dkt. 12-4

at 3. Plaintiffs contend that the Arbitration was terminated abruptly and prematurely, alleging that:

> The merits of Plaintiffs' claims—on which JAMS found Plaintiffs
> had a likelihood of prevailing—were yet to be heard at the final
> merits hearing before JAMS, which had been set for January 2021.
>
> In short, USCGIM was dissatisfied with the result of the JAMS
> hearings and rulings because the awards exposed its fraud,
> mismanagement, and self-dealing that pervaded the entire
> transaction. But instead of pursuing its defenses or attempting to
> reach an alternative resolution, USCGIM sought an easy way out of
> the dispute: it unilaterally dismantled the arbitration.
>
> Deprived of their ability to pursue the merits of their claims in
> arbitration (which had been instituted only because *USCGIM* had
> insisted on confidential arbitration clauses in all agreements),
> Plaintiffs now seek their day in court.

 Complaint ¶¶ 59-61.

On November 24, 2020, Plaintiffs filed this suit in Travis County District Court, alleging fraud,

conversion, breach of fiduciary duty, breach of contract, and tortious interference. Dkt. 1-3.[3] On

December 24, 2020, US Capital removed the case to federal court on the basis of diversity

jurisdiction, pursuant to 28 U.S.C. §§ 1332(a)(1) and 1441(a). Dkt. 1.

On January 13, 2021, Plaintiffs filed a Motion for Preliminary Injunction asking the District

Court to "enter a preliminary injunction ordering USCGIM to return to the Fund any money that

it has withdrawn from any Fund account since July 10, 2019, and, after returning withdrawn funds,

---

[3] This is not the first suit Noble has filed against US Capital in this Court. On December 27, 2020, US
Capital filed suit against US Capital and its principals, asserting essentially the same claims. *See Noble
Cap. Grp. LLC v. US Cap. Partners*, No. 1:19-cv-01255-LY (W.D. Tex. Dec. 27, 2020). In response,
US Capital filed a motion to compel arbitration based on the arbitration clauses in the agreements. On
May 12, 2020, the undersigned issued a Report and Recommendation that the motion to compel arbitration
should be granted and the case dismissed. *Id.* at Dkt. 27. On July 31, 2020, the District Court adopted the
Report and Recommendation, granted the motion to compel, and dismissed the case without prejudice. *Id.*
at Dkt. 30. Noble filed an appeal, which is pending before the Fifth Circuit. *Noble Cap. Grp. LLC v. US
Cap. Partners*, No. 20-50721 (5th Cir. Aug. 8, 2020).

to deposit the full balance of the Fund's bank accounts into the registry of the Court." Dkt. 5 at 27. The District Court denied the motion on February 12, 2021. The District Court found that "Noble's harm has already occurred and can be remedied by money damages," and therefore concluded that "[Noble] has not carried its burden to show that it is likely to be irreparably harmed in the absence of a preliminary injunction." Dkt. 20 at 6.

On April 8, 2021, the District Court referred to the undersigned US Capital's Motion to Compel Arbitration and Stay Proceedings, or Alternatively, Motion to Dismiss, or Alternatively, Motion to Transfer Venue. US Capital argues that the Court should stay this case and compel Plaintiffs to arbitrate because they are bound by the Arbitration Clauses contained in the LPA and MASA. Plaintiffs oppose the motion. The Court makes the following recommendations.

## II.  Legal Standards

The Federal Arbitration Act ("FAA") provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA allows a party that has entered an arbitration agreement to request an order compelling the parties to proceed with arbitration. 9 U.S.C. § 4. If the court is "satisfied" that a cause of action is subject to an enforceable arbitration provision, the court must "stay the trial of the action until such arbitration *has been had* in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added).

The agreement to arbitrate a dispute may be revoked and the parties may waive their rights to enforce arbitration because "[t]he right to arbitrate a dispute, like all contract rights, is subject to waiver." *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009). A party may waive its right to

enforce a contractual agreement for arbitration when that party in is default in the arbitration proceedings. *Folse v. Richard Wolf Med. Instruments Corp.*, 56 F.3d 603, 606 n.4 (5th Cir. 1995).

### III.  Analysis

US Capital argues that the Court should compel Plaintiffs to arbitration and stay this lawsuit under Section 3 of the FAA, 9 U.S.C. § 3, because Plaintiffs are bound by the Arbitration Clauses in the parties' agreements. Alternatively, US Capital argues that the case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1), (b)(3), (b)(6), and (b)(7), or transferred to California for the convenience of the parties and witnesses pursuant to 28 U.S.C. § 1404(a).

Plaintiffs respond that this case cannot be compelled to arbitration because the Arbitration has been terminated pursuant to US Capital's request through the Fund in the underlying Arbitration. In other words, Plaintiffs argue that the Court cannot refer a case to an arbitration that no longer exists. Alternatively, Plaintiffs argue that the arbitration provisions should not be enforced because they were procured by fraud. Finally, Plaintiffs contend that US Capital's alternative dismissal and transfer arguments are meritless. US Capital did not file a reply brief responding to Plaintiffs' arguments.

### A.  The Arbitration Has Been Terminated

The Arbitration Clauses in the parties' agreements provide that any dispute arising out of or related to the agreements will be referred to arbitration in San Francisco, California and administered by JAMS. *See* Dkts. 8-6 at 45, 8-7 at 5. Based on these Arbitration Agreements, US Capital argues that the Court should compel Plaintiffs to arbitration and stay this proceeding pursuant to Section 3 of the FAA, 9 U.S.C. § 3.

As stated above, Section 3 of the FAA requires district courts to stay court proceedings on issues subject to arbitration "until such arbitration *has been had* in accordance with the terms of

the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." (emphasis added); *see also Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("Section 3 provides that when claims are properly referable to arbitration, that upon application of one of the parties, the court shall stay the trial of the action until the arbitration is complete."). Thus, a stay is mandatory under Section 3 only until the arbitration "has been had" or, in other words, is complete.

In *Tillman v. Tillman*, 825 F.3d 1069 (9th Cir. 2016), the Ninth Circuit addressed what Section 3 means by "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. As in the instant case, the arbitrator in *Tillman* terminated the arbitration proceedings before issuing a final award because the claimant could no longer pay the arbitrator's fee. *Id.* at 1073. The Ninth Circuit concluded that the arbitration "has been had in accordance with the terms of the [arbitration] agreement" and, therefore, affirmed the district court's decision to lift the stay under Section 3. *Id.* at 1074. Numerous other courts have reached the same conclusion. *See Freeman v. SmartPay Leasing, LLC*, 771 F. App'x 926, 935 (11th Cir. 2019) (finding that district court acted within its discretion in lifting arbitration stay where arbitration was terminated after claimant failed to pay fees since arbitration "had been had"); *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1294 (10th Cir. 2015) (finding that arbitration had been had under Section 3 where panel terminated proceedings, so district court no longer was required to stay proceedings); *Bruzda v. Sonic Auto.*, No. 16-CV-02413-MEH, 2017 WL 5178967, at *3 (D. Colo. Jan. 23, 2017) (finding that arbitration had been had where arbitration was terminated for defendant's repeated refusal to pay fees, and defendant therefore defaulted right to arbitrate the case); *Rapaport v. Soffer*, No. 2:10-CV-00935-KJD, 2011 WL 1827147, at *2 (D. Nev. May 12, 2011) (finding that claimant

was not entitled to stay under Section 3 since claimant's failure to pay his portion of the fees resulted in termination of arbitration).[4]

As discussed above, in the underlying Arbitration, US Capital through the Fund filed a motion asking the JAMS Panel to *either* require Plaintiffs to pay the JAMS fees and expenses *or* terminate the Arbitration. Dkt. 12-1 at 3. Because no party agreed to pay for the JAMS fees and expenses, the JAMS Panel terminated the Arbitration. Dkt. 1-3 at 212. Therefore, the Arbitration in this case "has been had" for the purposes of Section 3 of the FAA. *Freeman*, 771 F. App'x at 935; *Tillman*, 825 F.3d at 1074; *Cahill*, 786 F.3d at 1294; *Bruzda*, 2017 WL 5178967, at *3.[5]

Section 3, moreover, "requires a stay only when the applicant for the stay is not in default of the arbitration." *Folse v. Richard Wolf Med. Instruments Corp.*, 56 F.3d 603, 606 n.4 (5th Cir. 1995). "Failure to pay arbitration fees constitutes a 'default' under § 3." *Cahill*, 786 F.3d at 1294; *accord Freeman,* 771 F. App'x at 934-35; *Hernandez v. Acosta Tractors Inc.*, 898 F.3d 1301, 1305 (11th Cir. 2018); *Bruzda*, 2017 WL 5178967, at *5; *Rapaport v. Soffer*, No. 2:10-cv-00935-KLD-RJJ, 2011 WL 1827147, at *2 (D. Nev. May 12, 2011). Because US Capital, through the Fund, refused to pay the arbitration fees and expenses, it was in default. Therefore, a stay is not mandated under Section 3. *See Cahill*, 786 F.3d at 1294.

In addition, US Capital through the Fund asked the JAMS Panel to either require Plaintiffs to pay the JAMS fees "or the Panel terminates these proceedings and permits the Fund to resume litigating its claims in federal court." Dkt. 12-1 at 3. The JAMS Panel terminated the Arbitration. US Capital and the Fund received exactly what they requested.

---

[4] *See also Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of the Republic of Venez.*, 575 F.3d 491, 496, 502 (5th Cir. 2009) (finding that district court's refusal to enforce arbitration clause had become moot when arbitration proceedings were "terminated without decision during the pendency of this appeal").

[5] Because the Court finds that US Capital's Motion to Compel Arbitration should be denied under Section 3 of the FAA, the Court need not address Plaintiffs' alternative arguments for denial.

For these reasons, US Capital is not entitled to a stay of this case under Section 3 of the FAA. The undersigned Magistrate Judge recommends that US Capital's Motion to Compel Arbitration and Stay should be denied.

### B.  Alternative Arguments for Dismissal under Rule 12

In the alternative, US Capital argues that if the Court does not compel Plaintiffs to arbitration, the Court should dismiss the case under Rule 12(b)(1), (b)(3), and (b)(6) because the parties' agreements contain Arbitration Clauses. Because the Arbitration has been had and Plaintiffs are entitled to pursue their claims in court, US Capital's alternative arguments for dismissal based on the Arbitration Clauses are without merit and should be denied.

US Capital further argues that this case should be dismissed under Rule 12(b)(7) for failure to join the Fund as a required party under Rule 19. Rule 19(a) provides, in pertinent part, that a person must be joined as a party where "that person claims an interest in the subject matter of the action and is so situated that disposing of the action in the person's absence may . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." A party seeking dismissal under Rule 12(b)(7) bears the burden of showing that a missing party is necessary. *Hood ex rel. Mississippi v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009). US Capital's two-sentence argument has not met that burden. The Fund was not a party to the Arbitration. In addition, Plaintiffs have alleged facts suggesting that that the Fund is controlled by US Capital and that only US Capital has access to the money at issue. Accordingly, US Capital's Rule 12(b)(7) argument is without merit.

Next, US Capital argues that this case should be dismissed under Rule 9(b) for failure to plead with particularity. Rule 9(b) imposes a heightened pleading standard on all claims sounding in fraud, requiring the pleader to "state with particularity the circumstances constituting fraud or

mistake." Although the Fifth Circuit applies Rule 9(b) to fraud complaints "with bite and without apology," it also has recognized that "Rule 9(b) supplements but does not supplant Rule 8(a)'s notice pleading" standard. *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (cleaned up). Rule 9(b) "requires only simple, concise, and direct allegations of the circumstances constituting fraud, which after Twombly must make relief plausible, not merely conceivable, when taken as true." *Id.* at 186 (internal quotation marks omitted). In other words, it is not a plaintiff's burden at this stage of the proceedings to prove its claims; it merely must allege facts which, taken as true, make relief plausible. *See id.*

Pleading fraud with particularity requires a plaintiff to specify the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177-79 (5th Cir. 1997); *see also Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) ("Put simply, Rule 9(b) requires the who, what, when, where, and how to be laid out.") (internal quotations omitted); *United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005). The Fifth Circuit has recognized that "[w]hat constitutes 'particularity' will necessarily differ with the facts of each case." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir.), *opinion modified on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003) (quoting *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992)). The Court finds that Plaintiffs' 33-page Complaint contains sufficient facts to comply with Rule 9(b)'s particularity requirements. Plaintiffs' Complaint lays out the "who, what, when, where, and how." *Potter*, 607 F.3d at 1032.

Based on the foregoing, US Capital's alternative motions to dismiss under Rule 12 are without merit, and the Court recommends that they be denied.

**C.  Motion to Transfer Venue**

Finally, US Capital argues that the Court should transfer this case to California for the convenience of the parties and witnesses pursuant to 28 U.S.C. § 1404(a), based on the forum selection clauses contained in the parties' agreements. Section 1404(a) provides that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The decision whether to transfer a case under § 1404(a) is a matter within the district court's sound discretion. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008). Because a plaintiff has the privilege of choosing the venue in which to file, the defendant bears the burden of proving that a transfer of venue would be "clearly" more convenient for the parties and witnesses and in the interest of justice. *Id.* at 315; *see also Schexnider v. McDermott Int'l, Inc.*, 817 F.2d 1159, 1163 (5th Cir. 1987) (stating that "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum that may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum"). The defendant must show "good cause" for the transfer. *Volkswagen*, 545 F.3d at 315.

US Capital argues that the parties' agreements contain forum selection clauses stating that California is the proper venue, but fails to specify which provisions of the agreements contain such clauses. Plaintiffs argue that the agreements do not contain forum selection clauses identifying California as the proper venue; rather, Plaintiffs contend that the Agreements contain Arbitration Clauses specifying that the *arbitration* shall take place in California.

US Capital has not sustained its burden to demonstrate that a transfer of venue would be "clearly" more convenient for the parties and witnesses and in the interest of justice. *Volkswagen*, 545 F.3d at 315. Accordingly, US Capital's Motion to Transfer Venue should be denied.

14

## IV.  Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **DENY** Defendant's Motion to Compel Arbitration and Stay Proceedings, or Alternatively, Motion to Dismiss, or Alternatively, Motion to Transfer Venue (Dkt. 8).

**IT IS FURTHER ORDERED** that the Clerk **REMOVE** this case from the Magistrate Court's docket and **RETURN** it to docket of the Honorable Robert Pitman.

## V.  Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on May 14, 2021.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE

15