# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **NOBLE CAPITAL FUND MANAGEMENT, LLC, TXPLCFQ, LLC, and TXPLCFNQ, LLC,** | § | |
| *Plaintiffs* | § | |
| | § | |
| **v.** | § | **Case No.  1:20-CV-1247-RP** |
| | § | |
| **US CAPITAL GLOBAL INVESTMENT MANAGEMENT, LLC** *f/k/a* **US CAPITAL INVESTMENT MANAGEMENT, LLC, US CAPITAL PARTNERS, INC., JEFFERY SWEENEY, CHARLES TOWLE, and PATRICK STEELE,** | § | |
| *Defendant* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE ROBERT PITMAN**
   **UNITED STATES DISTRICT JUDGE**

Before the Court are Patrick Steele's Motion to Dismiss Plaintiffs' First Amended Complaint With Prejudice and/or to Compel Arbitration, filed November 17, 2022 (Dkt. 64); Charles Towle's Motion to Dismiss Plaintiffs' First Amended Complaint With Prejudice and/or to Compel Arbitration, filed November 21, 2022 (Dkt. 69); Jeffrey Sweeney's Motion to Dismiss Plaintiffs' First Amended Complaint With Prejudice and/or to Compel Arbitration, filed December 21, 2022 (Dkt. 89); US Capital Partners, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint with Prejudice, and/or to Compel Arbitration, filed November 30, 2022 (Dkt. 83); Defendants' Motion for Summary Judgment, filed December 30, 2022 (Dkt. 92); and the associated response and reply briefs.[1]

---

[1] By Text Orders entered January 6, 2023, the District Court referred each motion to this Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

# I.  Background

This case is one of four lawsuits filed in this Division over a $25 million real estate investment fund created by the parties and related entities in early 2017.

## A.  Parties

Plaintiff Noble Capital Fund Management, LLC ("NCFM") is the operations arm and subsidiary of Noble Capital Group, LLC ("NCG"), an Austin, Texas-based private real estate lender. Am. Compl., Dkt. 40 ¶ 13. NCFM specializes in "making private loans to real estate entrepreneurs seeking to acquire residential property in Texas, where they will add value and later sell for profit or refinance into their personal asset portfolio." *Id.* Plaintiffs TXPLCFQ, LLC and TXPLCFNQ, LLC ("Feeder Funds") are Texas limited liability pooled capital funds "comprised of roughly 110 investors, all of whom are NCFM's clients." Dkt. 5-1 at 116.

Defendant US Capital Global Investment Management, LLC ("USCGIM"), an investment management company, and Defendant US Capital Partners, Inc. ("USCP"), a financial advising company (collectively, "US Capital"), are part of an affiliated group of San Francisco-based companies operating under the banner of US Capital Group, Inc. ("USCG"), "which engages in various capital market activities." *Id.* Defendants Jeffrey Sweeney, Charles Towle, and Patrick Steele are partners and principals of USCGIM and its related entities. Dkt. 40 ¶ 17.

## B.  Facts[2]

The parties began negotiations in June 2016 "to explore the possibility of establishing an investment fund through which investors could invest in Noble's private lending company." *Id.* ¶ 18. A series of agreements followed.

---

[2] The facts are summarized from the pleadings and previous opinions of the arbitrators, this Magistrate Judge, the District Court, and the Fifth Circuit Court of Appeals.

First, NCFM and USCP entered into a Letter Agreement on August 8, 2016, under which USCP, in exchange for a commission, would act as NCFM's financial advisor for its attempt to raise up to $50 million in equity and debt. 1:19-CV-01255-LY, Dkt. 17-3 at 1. The Letter Agreement contained an arbitration clause requiring the parties to arbitrate any dispute under the agreement before a Judicial Arbitration and Mediation Services, Inc. ("JAMS") arbitrator in San Francisco, California. *Id.* at 4.

In early 2017, the parties agreed to create the US Capital/Noble Capital Texas Real Estate Income Fund, LP ("Fund"), a $25 million private investment fund to invest in the Texas residential real estate market "through short-term 'fix-and-flip' rehab loans." Dkt. 5-1 at 116. To create the Fund, NCFM investors put $25 million into the Feeder Funds, which US Capital promised to supplement with money from "significant institutional investors." Dkt. 20 at 2.

NCFM, USCGIM, and the Fund on January 18, 2017 entered into a Management Advisory Services Agreement under which NCFM would be responsible for managing the Fund's investments. Dkt. 8-7. On July 1, 2017, the parties entered into a Limited Partnership Agreement[3] under which USCGIM became the general partner of the Fund and responsible for its administration. Dkt. 40 ¶ 24. Both agreements also contained arbitration clauses providing that any dispute arising out of or related to the agreements would be referred to arbitration in San Francisco, California, administered by JAMS. Dkts. 8-6 at 45, 8-7 at 5 ("Arbitration Agreements").

The relationship between the parties quickly soured. NCFM alleges that Defendants "made repeated misrepresentations relating to their ability to raise capital and operate an investment fund with the purpose of inducing Noble to place millions of investment dollars with US Capital, from which Sweeney, Towle, and Steele would extract excessive fees to the detriment of investors."

---

[3] Dkt. 8-6.

Dkt. 40 ¶ 2. NCFM further alleges that, soon after the fund was established, USCGIM failed to deliver on its promise to raise capital and "engaged in a string-along fraud designed to stop Noble from terminating the relationship and forcing Noble to pay approximately $750,000 in excessive fees for services . . . promised but never performed." *Id.* ¶ 3. USCGIM denies the allegations and alleges that NCFM has been "self-dealing with investor dollars by grossly mismanaging the Fund for their benefit and to the detriment of the Fund and its investors." No. 1: 22-CV-00626-LY, Dkt. 8 ¶ 16.[4] USCGIM also alleges that NCFM "intentionally and knowingly devised and implemented a scheme of publishing defamatory accusations" against it. *Id.*

## C. Procedural History

On January 15, 2019, NCFM and the Feeder Funds filed a JAMS arbitration proceeding in San Francisco, California against USCGIM, alleging claims for breach of contract, breach of fiduciary duty, and conversion. Dkt. 5-1 at 110 (JAMS Arbitration No. 1100104841). The Fund later joined the JAMS Arbitration as a third-party claimant, alleging claims against NCFM. Dkt. 12-1 at 2.

On December 27, 2019, while the JAMS Arbitration was pending, NCFM and NCG filed their first lawsuit against USCP, Sweeney, Towle, and Steele ("USCP Defendants"), alleging fraud, fraudulent inducement, and conspiracy. *Noble Cap. Grp., LLC v. US Cap. Partners, Inc.*, No. 1:19-CV-01255-LY (W.D. Tex. Dec. 27, 2019) ("NCFM's First Suit"). The USCP Defendants filed a Motion to Compel Arbitration and Stay Proceedings, or Alternatively to Dismiss, under Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, based on the Arbitration Agreements. *Id.* at Dkt. 17. NCFM and NCG did not dispute that their claims fell within the parties' Arbitration

---

[4] USCGIM and USCP filed their own suit against NCIM and NCG, alleging breach of contract, malicious prosecution, and abuse of process. *US Cap. Global Investment Mgmt. LLC v. Noble Cap. Grp., LLC*, No. 1:22-CV-00626-LY (W.D. Tex. June 28, 2022). NCIM and NCG filed a motion to dismiss, which is pending. Dkt. 10.

Agreements, but argued that those agreements were unenforceable because they were fraudulently procured and not all parties were signatories.

This Magistrate Judge issued a Report and Recommendation that the District Court grant the Motion to Compel Arbitration and dismiss the case. Dkt. 27. This Court found that the parties entered into valid and binding Arbitration Agreements and delegated to the arbitrator the primary power to rule on arbitrability and enforceability of the agreements, including claims of fraudulent inducement. *Id.* at 10. This Court also found that the parties were bound by the Arbitration Agreements even though they were not all signatories because the agreements applied to the parties' affiliates, subsidiaries, associated companies, successors, and assignees. *Id.* at 14. The Court recommended that Plaintiffs be compelled to arbitrate those claims in the then-pending JAMS Arbitration. *Id.* at 17. The District Court adopted the Report and Recommendation, ordered the parties to arbitrate, and dismissed the case with prejudice. Dkt. 30. Noble appealed, and the Fifth Circuit affirmed. *Noble Cap. Grp., L.L.C. v. US Cap. Partners, Inc.*, No. 20-50721, 2021 WL 3477481, at *1 (5th Cir. Aug. 6, 2021). But NCFM neither added the USCP Defendants as parties to the JAMS Arbitration nor initiated a separate arbitration proceeding against those defendants.

The Fund, as third-party claimant to the JAMS Arbitration, filed a motion in the JAMS Arbitration asking the panel to order NCFM to pay the Fund's portion of the JAMS fees and expenses or terminate the proceedings under JAMS Rule 6(c).[5] Dkt. 12-1. The Fund claimed that it could not pay the approximately $90,000 in arbitration fees and expenses because "Noble has liquidated and distributed the vast majority of the Fund's assets, and the Panel has segregated the

---

[5] JAMS Rule 6(c) provides: "If, at any time, any Party has failed to pay fees or expenses in full, JAMS may order the suspension or termination of the proceedings. JAMS may so inform the Parties in order that one of them may advance the required payment. If one Party advances the payment owed by a non-paying Party, the Arbitration shall proceed, and the Arbitrator may allocate the non-paying Party's share of such costs, in accordance with Rules 24(f) and 31(c)."

remaining Fund monies, and denied the Fund's multiple requests to use a portion of those monies to pay for JAMS fees and expenses." *Id.* at 3. Because "none of the other parties" to the JAMS Arbitration paid the Fund's fees and expenses, the Arbitration Panel granted the Fund's motion and terminated the JAMS Arbitration on August 31, 2020. Dkt. 12-3. JAMS notified all parties to the JAMS Arbitration that the matter was officially closed on October 28, 2020.[6] Dkt. 12-4.

Less than a month later, NCFM and the Feeder Funds ("Plaintiffs") filed this lawsuit in Travis County District Court against USCGIM, alleging fraud, fraudulent inducement, conversion, breach of fiduciary duty, breach of contract, and tortious interference. Dkt. 1-3. USCGIM removed the case to federal court based on diversity jurisdiction and filed a Motion to Compel Arbitration and Stay Proceedings, arguing that the District Court must stay or dismiss the suit under Section 3 of the FAA. Dkt. 8. That section provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, **shall on application of one of the parties stay the trial of the action until such arbitration has been had** in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). This Court issued a Report and Recommendation that the District Court deny USCGIM's Motion to Compel Arbitration because "a stay is mandatory under Section 3 only until the arbitration 'has been had' or, in other words, is complete." Dkt. 21 at 10.

---

[6] On February 21, 2020, USCGS filed a separate arbitration proceeding against the Noble entities with the Financial Industry Regulatory Authority ("FINRA") Dispute Resolution Services in Houston, Texas, alleging breach of the Letter Agreement. 1:19-CV-1255-LY (FINRA No. 20-00631), Dkt. 26 at 2. The FINRA arbitrator issued an Award denying all USCGS's claims on May 27, 2021. *See* https://www.finra.org/sites/default/files/aao_documents/20-00631.pdf. In its Award, the arbitrator stated that USCGS's witness failed to appear for the hearing and that USCGS rested its case without any request to postpone or reschedule the hearing. *Id.*

Because the JAMS Arbitration was terminated on August 31, 2020, "the Arbitration in this case 'has been had' for the purposes of Section 3 of the FAA" and a stay was not mandated under the statute. *Id.* at 11. This Court also found that USCGIM was not entitled to a stay because it had defaulted the arbitration by refusing to pay for the arbitration fees and expenses.[7] The District Court adopted the Report and Recommendation and denied USCGIM's Motion to Compel Arbitration and Stay. Dkt. 23. USCGIM appealed and the Fifth Circuit affirmed once again. The Fifth Circuit found that because the arbitration "has been had" and there was "no arbitration to return this case to," the District Court "properly denied US Capital's motion to stay judicial proceedings and compel arbitration." *Noble Cap. Fund Mgmt., L.L.C. v. US Cap. Glob. Inv. Mgmt., L.L.C.*, 31 F.4th 333, 336 (5th Cir. 2022).

Plaintiffs then filed an Opposed Motion for Leave to File an Amended Complaint "setting forth additional facts and claims and joining additional parties." Dkt. 32. The District Court orally granted the Motion for Leave and Plaintiffs filed their First Amended Complaint, adding the USCP Defendants as parties. Dkt. 40.[8]

## D. Pending Motions

The USCP Defendants now bring nearly identical Motions to Dismiss under Rule 12(b)(1), arguing that the Court lacks subject-matter jurisdiction to hear Plaintiffs' claims. All Defendants bring a Joint Motion for Summary Judgment under Federal Rule of Civil Procedure 56, arguing that they are entitled to judgment on all of Plaintiffs' claims.

---

[7] "Failure to pay arbitration fees constitutes a 'default' under § 3." *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1294 (10th Cir. 2015).

[8] On July 5, 2022, the Fund filed its own lawsuit against NCG, NCFM, related entities, and NCG principals, alleging breach of contract, fraud, unjust enrichment, conversion, unfair competition, breach of the duty of good faith and fair dealing, false advertising, intentional interference with contractual relations, and civil RICO violations. *Noble Cap. Texas Real Est. Income Fund LP v. Newman*, No. 1:22-CV-00652-LY (W.D. Tex. July 5, 2022). The defendants moved to dismiss. The District Court dismissed the complaint but permitted the Fund to file an amended complaint on March 22, 2023. Dkt. 14; Dkt. 16.

## II.  The USCP Defendants' Motions to Dismiss

The USCP Defendants argue that the Court does not have subject-matter jurisdiction to hear Plaintiffs' claims because those claims must be arbitrated. They also contend that the doctrine of res judicata precludes Plaintiffs from asserting their claims in this suit because the District Court and the Fifth Circuit ruled in NCFM's First Suit that Plaintiffs' claims are subject to the parties' Arbitration Agreements and must be arbitrated. Accordingly, the USCP Defendants argue, Plaintiffs' claims must be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction. Alternatively, the USCP Defendants argue that Plaintiffs' claims should be dismissed because Plaintiffs waived their right to litigate those claims against them by failing to add them as parties to the JAMS Arbitration.

Plaintiffs respond that the USCP Defendants' Motions to Dismiss should be denied because (1) the JAMS Arbitration has already occurred and collateral estoppel precludes the USCP Defendants from relitigating the same claims; (2) the USCP Defendants have waived their right to arbitrate; and (3) enforcement of the Arbitration Clauses would be inequitable because they were procured by fraud.

### A.  Rules 12(b)(1) and 12(b)(6)

Federal district courts are courts of limited jurisdiction and may exercise only jurisdiction expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Rule 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. A federal court properly dismisses a case or claim for lack of subject-matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the claim. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal under Rule 12(b)(6) also may be appropriate based on a successful affirmative defense, provided that the affirmative defense appears on the face of the complaint. *Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 588 (5th Cir. 2020). A court may dismiss claims as barred by res judicata if the bar is apparent from the pleadings and judicially noticed facts. *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 320 (5th Cir. 2022); *Matter of 3 Star Props., L.L.C.*, 6 F.4th 595, 604 (5th Cir. 2021).

## B. Subject-Matter Jurisdiction

The USCP Defendants argue that the Court lacks subject-matter jurisdiction over Plaintiffs' claims because those claims must be arbitrated and Plaintiffs are precluded from arguing otherwise under the doctrine of res judicata. Neither of these defenses affects the Court's subject-matter jurisdiction.

Subject-matter jurisdiction refers to a tribunal's "power to hear a case," a matter that "can never be forfeited or waived." *Union Pac. R. Co. v. Bhd. of Locomotive Engineers & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 81 (2009). "Conversely, mandatory grievance and arbitration procedures in contracts . . . are waivable and do not affect this court's subject-matter jurisdiction." *Ruiz v. Donahoe*, 784 F.3d 247, 249-50 (5th Cir. 2015). Agreements

to arbitrate implicate forum selection and claims-processing rules, not subject-matter jurisdiction. *Id.* at 250.

The defense of res judicata, "while having a somewhat jurisdictional character, does not affect the subject matter jurisdiction of the district court." *Smalls v. United States*, 471 F.3d 186, 189 (D.C. Cir. 2006) (cleaned up); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) ("Preclusion, of course, is not a jurisdictional matter."). A res judicata defense should not be asserted in a Rule 12(b)(1) motion because it does not involve the court's jurisdiction. *Griffin v. Am. Zurich Ins. Co.*, 3:14-CV-2470-P, 2016 WL 3360432, at *2 (N.D. Tex. Feb. 24, 2016), *aff'd*, 697 F. App'x 793 (5th Cir. 2017). Instead, res judicata should be raised as an affirmative defense under Rule 8(c)(1), or in a Rule 12(b)(6) motion when the elements of the defense are apparent on the face of the pleadings and judicially noticed facts. *Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 571 (5th Cir. 2021); *Punch v. Nelson*, No. 3:22-CV-00037, 2022 WL 2789020, at *1 (S.D. Tex. July 15, 2022), *R. & R. adopted*, No. 3:22-CV-37, 2022 WL 3213126 (S.D. Tex. Aug. 9, 2022). For these reasons, the court construes Defendants' Motions to Dismiss under Rule 12(b)(6).

## C. Res Judicata

The term res judicata comprises two distinct doctrines regarding the preclusive effect of prior litigation: (1) claim preclusion, sometimes called true res judicata, and (2) issue preclusion, commonly known as collateral estoppel. *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020); *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). Claim preclusion

> prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated. If a later suit advances the same claim as an earlier suit between the same parties, the earlier suit's judgment prevents litigation of all

> grounds for, or defenses to, recovery that were previously available
> to the parties, regardless of whether they were asserted or
> determined in the prior proceeding.

*Lucky Brand Dungarees*, 140 S. Ct. at 1594 (citation omitted). Claim preclusion applies when (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions. *Students for Fair Admissions*, 37 F.4th at 1087.

It is the second doctrine, issue preclusion, which arises in this case. Issue preclusion or collateral estoppel "precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment." *Lucky Brand Dungarees*, 140 S. Ct. at 1594. Issue preclusion applies when (1) the parties are identical or in privity; (2) the identical issue was previously adjudicated; (3) the issue was actually litigated; and (4) the previous determination was necessary to the decision. *Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*, 37 F.4th 1078, 1089 n.16 (5th Cir. 2022); *In re Westmoreland Coal Co.*, 968 F.3d 526, 532 (5th Cir. 2020).[9] All elements are satisfied here.

In their First Amended Complaint, Plaintiffs assert the same claims NCFM asserted in its First Suit against the USCP Defendants: fraud, fraudulent inducement, and conspiracy. In both suits, Plaintiffs argue that the Arbitration Agreements are unenforceable because they were procured by fraud. In NCFM's First Suit, this Court ruled that all of Plaintiffs' claims were subject to the Arbitration Agreements and must be arbitrated, including Plaintiffs' claim that the Arbitration Agreements were unenforceable because they were procured by fraud. The District Court granted

---

[9] A fourth factor—whether any special circumstances would make preclusion unfair—applies only to offensive issue preclusion. *Westmoreland Coal*, 968 F.3d at 532 n.6. This factor does not apply because the USCP Defendants have invoked preclusion as a defense.

the Motion to Compel Arbitration, ordered the parties to arbitrate "all claims raised in this action," dismissed Plaintiffs' claims with prejudice, and entered a Final Judgment, which the Fifth Circuit affirmed.

While the Feeder Funds were not parties to NCFM's First Suit, Plaintiffs do not dispute that the Feeder Funds are in privity with NCG and NCFM. As the USCP Defendants point out, the Feeder Funds (1) were set up by NCFM and consist entirely of NCFM clients, Dkt. 40 ¶ 28, and (2) the same individual, Grandy Collins, manages NCFM and the Feeder Funds, Dkt. 69 at 11. The Court finds that NCFM adequately represents the Feeder Funds' interests and thus the parties are in privity, satisfying the first requirement for issue preclusion. *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) (noting that a nonparty may be bound by a judgment in a previous suit where it was adequately represented by someone with the same interests who was a party to the suit); *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990) (stating that privity exists where the non-party's interests were adequately represented by a party to the original suit).

For the second requirement, the identical issue of whether the Arbitration Agreements applied to Plaintiffs' claims was previously adjudicated by the District Court—which found that Plaintiffs' claims are subject to the Arbitration Agreements and must be arbitrated—and affirmed by the Fifth Circuit. That issue was actually litigated by the parties, satisfying the third requirement. As to the final factor, the determination that the Arbitration Agreements applied to Plaintiffs' claims was essential to the Court's decision to compel arbitration and dismiss the case.

Because all elements of issue preclusion have been met, Plaintiffs' claims are barred by res judicata. *See Kansas City S. Ry. Co. v. Canadian Nat'l/Ill. Cent. R.R.*, No. 04-30782, 2005 WL 2012356, at *4 (5th Cir. Aug. 23, 2005) (finding that res judicata precluded plaintiff's lawsuit where district court in previous action found plaintiff's claims covered by arbitration agreement);

*Wheeler v. Kidder Peabody & Co.*, 8 F.3d 21, No. 92-2930, 1993 WL 455869, at *3 (5th Cir. 1993) (holding that plaintiff was collaterally estopped from relitigating validity of arbitration agreement where state court had found it valid and enforceable); *Abernathy v. Becon Constr. Co.*, No. 1:14-CV-00466-KFG, 2016 WL 11384340, at *9 (E.D. Tex. June 22, 2016) (holding that defendant was collaterally estopped from arguing an arbitration agreement was unenforceable where the district court in a prior case ruled the agreement was valid), *R. & R. adopted*, 2016 WL 4399922 (E.D. Tex. Aug. 18, 2016).

Plaintiffs do not dispute that all elements of issue preclusion are present. Instead, as stated, they argue that the USCP Defendants' Motions to Dismiss should be denied because (1) collateral estoppel precludes them from relitigating the same claims previously litigated in this case; (2) the USCP Defendants have waived their right to arbitrate; and (3) enforcement of the Arbitration Clauses would be inequitable because they were procured by fraud. The Court addresses each of these arguments in turn.

### 1. Collateral Estoppel Does Not Preclude the USCP Defendants' Arguments That This Case Should Be Arbitrated

Plaintiffs contend that the USCP Defendants should be collaterally estopped from arguing that this case should be arbitrated because the Court denied USCGIM's motion to compel arbitration. Again, before the USCP Defendants were parties, the Court denied USCGIM's motion to compel arbitration after determining that a stay under Section 3 of the FAA was not mandatory because the JAMS Arbitration between Plaintiffs and USCGIM had terminated. Dkt. 23. Plaintiffs argue that because the USCP Defendants are in privity with USCGIM, they should be collaterally estopped from arguing that Plaintiffs should be compelled to arbitrate their claims against the USCP Defendants.

Plaintiffs misconstrue the USCP Defendants' argument. The USCP Defendants do not argue simply that Plaintiffs' claims must be arbitrated, but that the doctrine of res judicata bars their claims because the District Court determined that those claims must be arbitrated. In any event, the Court concludes that collateral estoppel does not preclude the USCP Defendants' arguments.

Plaintiffs confuse collateral estoppel/issue preclusion with the law of the case theory:

> Issue preclusion addresses the effect in a current case of a prior adjudication in *another case*. So it doesn't often have much to say about the preclusive effects of rulings within the framework of a continuing action. Usually, only the more flexible law of the case doctrine governs the preclusive effect of an earlier decision "within a single action."

*Currier v. Virginia*, 138 S. Ct. 2144, 2154 (2018) (citation omitted). Accordingly, collateral estoppel/issue preclusion does not apply here. *See Hull v. Freeman*, 991 F.2d 86, 90 (3d Cir. 1993) ("Relitigation of issues previously determined in the same litigation is controlled by principles of the law of the case doctrine rather than collateral estoppel."); 18A EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE ("WRIGHT & MILLER") § 4434 (3d ed. April 2022 Update) ("Some opinions seem to confuse preclusion with law-of-the-case principles, defeating reconsideration of matters that should remain subject to revision in the same action. Preclusion should not apply within the framework of a continuing action.").

The law of the case doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messenger v. Anderson*, 225 U.S. 436, 444 (1912); *see also Arizona*, 460 U.S. at 618 ("Law of the case directs a court's discretion, it does not limit the tribunal's power."). "Unlike the more precise requirements of res judicata, law of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). "So long as the same

case remains alive, there is power to alter or revoke earlier rulings." 18B WRIGHT & MILLER § 4478. The doctrine "cannot prohibit a court from disregarding an earlier holding in an appropriate case." *Castro v. United States*, 540 U.S. 375, 384 (2003). In addition,

> Unlike res judicata, law of the case does not operate to bar subsequent consideration of matters that could have been, but were not, raised and resolved in the earlier proceeding. Like the doctrine of collateral estoppel, it prohibits relitigation only of matters decided, expressly or by necessary implication, in the prior [judicial] proceeding.

*Signal Oil & Gas Co. v. Barge W-701*, 654 F.2d 1164, 1169 (5th Cir. 1981).

The Court finds that the discretionary law of the case doctrine does not preclude the USCP Defendants from asserting res judicata. When the District Court denied USCGIM's motion to compel arbitration and the Fifth Circuit affirmed, the USCP Defendants were not yet defendants in this case. *See Currier*, 138 S. Ct. at 2154-55 (stating that the doctrine of issue preclusion does not often bar relitigation of issues when "[t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action"). The parties did not raise and the Courts did not address the res judicata issue at that time because the USCP Defendants were not yet parties. *See Signal Oil*, 654 F.2d at 1169 (5th Cir. 1981) (law of the case does not bar subsequent consideration of matters that could have been, but were not, raised and resolved in the earlier proceeding).

### 2.  The USCP Defendants Did Not Waive the Right to Arbitrate

Next, Plaintiffs argue that the USCP Defendants' Motions to Dismiss should be denied because the USCP Defendants waived their right to arbitrate by failing to join the JAMS Arbitration or pay the JAMS fees despite being fully aware of the proceeding. "The right to arbitrate a dispute, like all contract rights, is subject to waiver." *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009). The question of what waives the right of arbitration depends on the facts of each case. *Petroleum*

*Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009). Because there is a strong presumption against finding a waiver of arbitration, the party asserting waiver carries a heavy burden of proof. *Forby v. One Techs., L.P.*, 13 F.4th 460, 465 (5th Cir. 2021) (citations omitted).

In this Circuit, a party waives its right to arbitration by "substantially invoking the judicial process." *Id.*[10] For waiver purposes, "a party only invokes the judicial process to the extent it litigates a specific claim it subsequently seeks to arbitrate." *Id.* (quoting *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 328 (5th Cir. 1999)); *see also Cooper v. WestEnd Cap. Mgmt., L.L.C.*, 832 F.3d 534, 542 (5th Cir. 2016) ("To invoke the judicial process, a party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.").

The USPC Defendants have not attempted to litigate Plaintiffs' claims in this Court. To the contrary, once Plaintiffs amended to add the USPC Defendants, they moved to compel those claims to arbitration. The USPC Defendants also moved to compel arbitration in NCFM's First Suit. The USPC Defendants, then, have taken no "overt act in court that evinces a desire to resolve this arbitrable dispute through litigation rather than arbitration, nor [have they] attempted to seek a decision on the merits before attempting to arbitrate them." *Forby*, 13 F.3d at 465 (holding that defendant did not waive his right to arbitrate claims where he never tried to litigate those claims before moving to compel arbitration); *see also Subway Equip.*, 169 F.3d at 329 (holding that

---

[10] Before *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022), the Fifth Circuit (and several others) required the party moving for waiver to show that he or she was prejudiced. *See Forby*, 13 F.4th at 465 ("We evaluate waiver under a two-step test, asking first whether a party substantially invoked the judicial process and, second, whether it caused the other party prejudice."). But in *Morgan*, 142 S. Ct. at 1712, the Supreme Court held that prejudice is not a requirement of waiver under the FAA. Thus, the test for waiver in this Circuit is whether a party has substantially invoked the judicial process. *Vollmering v. Assaggio Honolulu, LLC*, No. 2:22-CV-00002, 2022 WL 6246881, at *12 (S.D. Tex. Sept. 17, 2022), *R. & R. adopted*, 2022 WL 6250679 (S.D. Tex. Oct. 6, 2022).

defendant did not waive his right to arbitrate claim where it "did not invoke the judicial process with respect to the arbitrable claim at issue here").

Plaintiffs appear to argue that the USPC Defendants acted inconsistently with their contractual right to arbitrate because USCGIM (and every party to the JAMS Arbitration, including Plaintiffs) failed to pay the arbitration fees and the arbitration was terminated. But the USPC Defendants were not parties to the JAMS Arbitration and so had no obligation under JAMS Rule 6(c) to pay the arbitration fees. *See* JAMS Rule 6(c) ("If, at any time, **any Party** has failed to pay fees or expenses in full, JAMS may order the suspension or termination of the proceedings.").[11] The USPC Defendants have not waived their right to arbitrate Plaintiffs' claims.

### 3. Res Judicata Bars Plaintiffs' Equitability Argument

Finally, Plaintiffs argue that referring this matter to arbitration would be inequitable because the Arbitration Clauses were procured by fraud. NCFM made this same argument in NCFM's First Suit. 1:19-cv-01255-LY, Dkt. 19 at 4-7. This Court rejected the argument because "based on the delegation provisions in the agreements, the arbitrator has exclusive authority to resolve any disputes about the enforceability of the agreements, including Plaintiffs' claim that they were fraudulently induced into entering the arbitration clauses." *Id.*, Dkt. 27 at 10. The District Court adopted the Report and Recommendation, and the Fifth Circuit affirmed. *Id.* at Dkt. 30, Dkt. 34. Therefore, res judicata bars Plaintiffs from reasserting the argument. *See Matter of Westmoreland*, 968 F.3d at 532; *Picco*, 900 F.2d at 850.

### D. Conclusion on the USCP Defendants' Motions to Dismiss

As stated, the District Court ruled in NCFM's First Suit that Plaintiffs' claims against the USPC Defendants must be arbitrated under the binding Arbitration Agreements in the parties'

---

[11] https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-6.

contracts. Because Plaintiffs assert the identical claims against the USCP Defendants in this suit, res judicata bars Plaintiffs' claims, and this Magistrate Judge recommends that they be dismissed under Rule 12(b)(6).

### III.  Defendants' Motion for Summary Judgment

Defendants contend that they are entitled to summary judgment on all of Plaintiffs' claims under Rule 56 because Plaintiffs have not alleged sufficient facts to show that they are liable. Defendants' arguments go the merits of Plaintiffs' claims, all of which are subject to the binding Arbitration Agreements between the parties. Therefore, the arbitrator, not the Court, must adjudicate the merits of Plaintiffs' claims.

As stated above, this Court, the District Court, and the Fifth Circuit have determined that all claims asserted in NCFM's First Suit were subject to the parties' Arbitration Agreements. NCFM's First Suit was dismissed and NCFM and NCG were ordered to arbitrate those claims. NCFM and NCG failed to do so. After Plaintiffs sued USCGIM, USCGIM moved to compel arbitration, arguing that the Court must stay the case under Section 3 of the FAA. Plaintiffs responded that a stay was not required under Section 3 because the JAMS Arbitration had been terminated and thus "has been had." Plaintiffs also argued that USCGIM waived its right to compel arbitration because it failed to pay the Fund's arbitration fees. USCGIM did not file a reply brief.

Following Ninth, Tenth, and Eleventh Circuit precedent,[12] this Court found that "a stay is mandatory under Section 3 only until the arbitration 'has been had' or, in other words, is complete." Dkt. 21 at 10. Because the JAMS Arbitration had been terminated, this Court found that a stay was not mandated under Section 3. *Id.* at 11. This Court also stated that a stay under Section 3 was required only where "the applicant for the stay is not in default of the arbitration."

---

[12] At the time of its Report and Recommendation, the Fifth Circuit had not yet addressed the issue.

*Id.* Because USCGIM defaulted the JAMS Arbitration by failing to pay the Fund's arbitration fees, this Court found that a stay was not mandatory. *Id.* In its opinion affirming the District Court's decision, the Fifth Circuit agreed that the JAMS Arbitration "has been had" and that "[t]here is no arbitration to return this case to. " *Noble Cap. Fund Mgmt.*, 31 F.4th at 336. The Fifth Circuit held that "the district court properly denied US Capital's motion to stay judicial proceedings and compel arbitration." *Id.*

Both the Court and the Fifth Circuit focused on the narrow issue of whether a stay was mandatory under Section 3 after an arbitration "has been had." Neither court addressed the broader issue whether the claims asserted in this case should be adjudicated in court or in arbitration.

As discussed above, unlike res judicata (which does not apply to issues raised in the same case), the law of the case doctrine "does not operate to bar subsequent consideration of matters that could have been, but were not, raised and resolved in the earlier proceeding." *Signal Oil & Gas*, 654 F.2d at 1169; *see also Conway v. Chem. Leaman Tank Lines, Inc.*, 644 F.2d 1059, 1062 (5th Cir. 1981) ("The law of the case doctrine does not include all questions which were present in a case and which might have been decided but were not. The doctrine of the law of the case applies only to the issues decided, not to all those presented for decision but left answered."). Accordingly, the law of the case doctrine does not preclude the Court from addressing whether the claims asserted in this case should be arbitrated based on the binding Arbitration Agreements. *See id.* (holding that law of the case doctrine did not prevent the district court from considering "a meritorious issue never previously passed upon by it and never submitted to or decided by the appellate court on the previous appeal"); *Dejoria v. Maghreb Petroleum Expl.*, No. A-13-CV-654-JRN-AWA, 2016 WL 4250488, at *9 (W.D. Tex. Aug. 11, 2016) (finding that court was not precluded under law of the case doctrine from considering public policy and inconvenient forum

arguments on remand when those issues were not decided on appeal), *R. & R. adopted*, 2016 WL 11120939 (W.D. Tex. Sept. 7, 2016); 18B WRIGHT & MILLER § 4478.1 ("A ruling made early in the proceedings may rest on poorly developed facts that have been better developed by continuing proceedings. In these circumstances, the forward progress of the case encourages reconsideration.").

For the same reasons as explained in this Court's previous Report and Recommendation in NCFM's first suit (adopted by the District Court and affirmed by the Fifth Circuit), all claims asserted in this suit are subject to the parties' binding Arbitration Agreements and must be arbitrated. *See* 1:19-cv-1255-LY, Dkt. 27 at 5-18. The FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter*, 470 U.S. at 218. The Arbitration Agreements in this case must be enforced and the parties must arbitrate their claims.

Defendants argue that Plaintiffs have waived their right to arbitrate. Because the parties have delegated issues of arbitrability to the arbitrator, the parties must present their waiver arguments to the arbitrator. "The presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (cleaned up); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019) ("The [FAA] allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes."); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the Act leaves no place for the exercise of

discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").

Dismissal, rather than a stay pending arbitration, is proper "when *all* of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). Because all issues in this case must be arbitrated, this Court recommends dismissal of the action. *Id*.

## IV.  Recommendation

For these reasons, this Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Patrick Steele, Charles Towle, Jeffrey Sweeney, and US Capital Partners, Inc.'s Motions to Dismiss Plaintiffs' First Amended Complaint (Dkts. 64, 69, 83, and 89) under Rule 12(b)(6) because Plaintiffs' claims are barred by res judicata.

The Court **FURTHER RECOMMENDS** that all of Plaintiffs' claims in this suit be **DISMISSED** because those claims must be arbitrated.

Finally, the Court **RECOMMENDS** that the District Court **DISMISS** Defendants' Motion for Summary Judgment (Dkt. 92) as **MOOT**.

The Court **ORDERS** that the Clerk **REMOVE** this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Robert Pitman.

## V.  Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen

(14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on March 30, 2023.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE