IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NOBLE CAPITAL FUND MANAGEMENT, LLC, TXPLCFQ, LLC, and TXPLCFNQ, LLC<br><br>Plaintiffs,<br><br>v.<br><br>US CAPITAL GLOBAL INVESTMENT MANAGEMENT LLC, formerly known as US Capital Investment Management, LLC, US CAPITAL PARTNERS, INC., JEFFREY SWEENEY, CHARLES TOWLE, and PATRICK STEELE<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | 1:20-CV-1247-RP |

## ORDER

Before the Court are motions to dismiss filed by Defendants US Capital Partners, Inc., Jeffrey Sweeney, Charles Towle, and Patrick Steele (collectively, "USCP Defendants"). (Mots. Dismiss, Dkts. 64, 69, 83, 89). Also before the Court is the USCP Defendants' and US Capital Global Investment Management LLC's ("USCGIM") joint motion for summary judgment. (Dkt. 92). The Court referred all motions to United States Magistrate Judge Susan Hightower for a report and recommendation, (R. &. R., Dkt. 105), and held an in-person hearing on the motions, (Minute Entry, Dkt. 109). Having considered the parties' briefs, the record, and the relevant law, the Court finds that the report and recommendation should be adopted in part, granting the USCP Defendants' motions to compel arbitration but allowing the claims against USCGIM to proceed.

### I. BACKGROUND

This dispute spans four district court cases, two appeals to the Fifth Circuit, and at least one arbitration. This background will not purport to detail the entire account of the history between

Noble Capital and U.S. Capital. Instead, it will provide a brief overview of the parties involved in this particular suit, the facts, and the case's complex procedural posture.

### A. The Parties

Plaintiff Noble Capital Fund Management, LLC ("Noble Capital") is the operations arm of Noble Capital Group, LLC, an Austin-based real estate lender. (Am. Compl., Dkt. 40, at 4). Plaintiffs TXPLCFQ, LLC and TXPLCFNQ, LLC (together, the "Feeder Funds") are Texas limited liability pooled capital funds comprised of roughly 110 investors, all of whom are Noble Capital's clients.

Defendants, for purposes of the pending motions, can be separated into two groups. First is USCGIM, an investment management company. Second are the USCP Defendants, which include US Capital Partners, Inc., a financial advising company, and Defendants Sweeney, Towle, and Steele, all of whom are partners and principals of USCGIM and its related entities. (*Id.* at 5). The key distinction, as explained *infra* Section I.C, is that Noble Capital has arbitrated its claims against USCGIM but not the USCP Defendants.

### B. Factual Overview

In 2016, the parties began negotiations to explore the possibility of establishing a fund so that people could invest in Noble Capital's private lending company. (*Id.*). Noble Capital and US Capital Partners, Inc. entered into an agreement in August 2016 that contained an arbitration clause requiring the parties to arbitrate any dispute under the agreement before a Judicial Arbitration and Mediation Services, Inc. ("JAMS") arbitrator in San Fransisco, California. In January 2017, the parties agreed to create the US Capital/Noble Capital Texas Real Estate Income Fund, LP ("the Fund"), a $25 million private investment fund to invest in the Texas residential real estate market.[1]

---

[1] The Fund has filed a separate lawsuit against Noble Capital and its managers, *Noble Cap. Texas Real Estate Income Fund, LP v. Newman et al.*, No. 1:22-CV-652-DAE, (W.D. Tex. filed July 5, 2022).

2

Noble Capital put $25 million into the funds, which US Capital promised to supplement with money from investors. (*Id.* at 10). The parties entered into further management agreements, in which Noble Capital agreed to be responsible for managing the Fund's investments while USCGIM would be the general partner of the Fund and responsible for its administration. (*Id.* at 9–10).

The relationship quickly soured. Noble Capital alleges that the Defendants never contributed a dollar to the fund and had been knowingly and fraudulently misrepresenting their ability to raise investor money to contribute to the fund. (*Id.* at 10–12). Noble Capital alleges that USCGIM "engaged in a string-along" and forced Noble Capital to incur nearly $750,000 in excessive fees. (*Id.*). USCGIM alleges that Noble Capital engaged in "self-dealing" with investor money, mismanaged the Fund, and published defamatory statements against it. (R. & R., Dkt. 105, at 4).

### C. Procedural Posture

In January 2019, Noble Capital and the Feeder Funds commenced a JAMS arbitration against USCGIM (and USCGIM only) alleging claims for breach of contract, breach of fiduciary duty, and conversion. (Mot. Prelim. Inj., Dkt. 5-1, at 1110 (citing JAMS Arbitration No. 1100104841)). In December 2019, while the arbitration was pending, Noble Capital filed its first lawsuit against the USCP Defendants, alleging fraud, fraudulent inducement, and conspiracy. *Noble Cap. Grp., LLC v. US Cap. Partners, Inc.*, No. 1:19-CV-01255-LY (W.D. Tex. Dec. 27, 2019) ("*NCFM's First Suit*"). The USCP Defendants filed a motion to compel arbitration and stay proceedings or dismiss the case based on the arbitration agreements that the parties had signed. Noble Capital disputed that its claims against the USCP Defendants fell under the parties' arbitration agreement. However, the Court found that the parties had delegated the question of arbitrability to the arbitrator, and that all parties were bound by the arbitration agreement, even if not signatories to the original agreement, because they applied to all parties' affiliates, subsidiaries, associated companies, successors, and assignees. (*Id.* (R. &. R., Dkt. 27, at 10–14)). Accordingly, the

Court dismissed the case and ordered the parties to arbitrate. (*Id.*). Noble Capital appealed, and the Fifth Circuit affirmed. *Noble Cap. Grp., L.L.C. v. US Cap. Partners, Inc.*, No. 20-50721, 2021 WL 3477481, at *1 (5th Cir. Aug. 6, 2021) ("*Noble Cap. I*"). The appeals court emphasized that Noble Capital's allegations of fraud could not defeat the gateway arbitration question because they did not challenge the delegation clause specifically. *Id.* at *2–3. Despite the Fifth Circuit's holding, Noble Capital never added the USCP Defendants as parties to the ongoing JAMS arbitration. Rather, the USCP Defendants' role in the arbitration was limited to their capacity as witnesses. (Minute Entry, Dkt. 109).

On July 10, 2019, a JAMS arbitrator entered an emergency arbitrator's award, enjoining USCGIM from causing the Fund to use Fund money for its lawsuit or the outside investigation it was conducting into Noble Capital. (Op., Dkt. 26 at 2–3). A JAMS panel then placed an immediate freeze on the Fund's remaining assets. (*Id.*). In August 2020, the Fund claimed it could no longer pay JAMS expenses due to the order freezing its assets and required an order from the arbitrator directing Noble Capital to pay its arbitration fees. The arbitrator seems not to have entered any such order, and neither Noble Capital nor USCGIM paid the Fund's arbitration fees. As a result, the JAMS panel terminated the arbitration and officially closed the arbitration in October 2020. (*Id.*).

A month later, Noble Capital and the Feeder Funds filed suit against USCGIM in state court, asserting claims for fraud and fraudulent inducement, breach of fiduciary duty, breach of contract, and tortious interference. (Pet., Dkt. 1-3). USCGIM removed the case to federal court. (Notice, Dkt. 1-1). USCGIM then filed a motion to compel arbitration and stay proceedings, arguing that the Court was required to either stay or dismiss the case for arbitration. (Mot. Compel, Dkt. 8). The Court denied the motion, holding that it should not compel arbitration where the arbitration "has been had." (R. & R., Dkt. 21; Order, Dkt. 23). USCGIM appealed, and the Fifth Circuit again

affirmed. *Noble Cap. Fund Mgmt., L.L.C. v. US Cap. Glob. Inv. Mgmt., L.L.C.*, 31 F.4th 333, 336 (5th Cir. 2022) ("*Noble Cap. II*")).

Shortly after the Fifth Circuit entered its second opinion, Plaintiffs filed a motion to amend their complaint to add the USCP Defendants to this case. (Mot., Dkt. 32). The Court granted the motion on the record at the case's initial pretrial conference. (Minute Entry, Dkt. 38; Am. Compl., Dkt. 40). Newly added to the case, the USCP Defendants filed separate but essentially identical[2] motions to dismiss. (Mots. Dismiss, Dkts. 64, 69, 83, 89). The USCP Defendants argue that this Court lacks jurisdiction over the claims against them because they are subject to the parties' arbitration agreements. (Mot. Dismiss, Dkt. 83, at 5). Moreover, they argue that res judicata and collateral estoppel prevent this Court from hearing the claims against them. (*Id.* at 6–8). Plaintiffs responded, arguing that the motions should be denied because (1) the JAMS arbitration has already occurred, (2) the USCP Defendants have waived their right to arbitrate, and (3) enforcement of the arbitration clauses would be inequitable because they were procured by fraud. (Pls.' Resp., Dkt. 88, at 3–4). As its motion to compel arbitration was previously denied, USCGIM did not file a motion to dismiss. Instead, on December 30, 2022, both USCGIM and the USCP Defendants filed a joint motion for summary judgment on the merits of the case. (Mot. Summ. J., Dkt. 92).

The Court referred the motions to dismiss and motion for summary judgment to the magistrate judge for a report and recommendation. On March 30, 2023, the magistrate judge issued her report and recommendation, recommending that the Court grant the motions to dismiss. (R. & R., Dkt. 105). Further, the magistrate judge recommending dismissing the claims against USCGIM on res judicata grounds, and dismissing the motion for summary judgment as moot. (*Id.*).

---

[2] Defendants state that their motions are "distinct." (Mot. Dismiss, Dkt. 89, at 1 n.1). Although the motions are not verbatim copies of each other, they all raise similar arguments. (Mots. Dismiss, Dkts. 64, 69, 83, 89). For ease of reference, the Court will cite to USCP's Motion to Dismiss, (Dkt. 83), and responsive briefing to analyze these arguments.

5

Plaintiffs timely filed objections to the report and recommendation on April 13, 2023, (Objs., Dkt. 106), and Defendants filed a response, (Dkt. 107). On June 7, 2023, the Court heard arguments from both sides on the motions to dismiss, the report and recommendation, and Plaintiffs' objections. (Minute Entry, Dkt. 109).

## II. LEGAL STANDARD

### A. Motion to Dismiss

#### 1. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

#### 2. Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina*

6

*Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

### B. Motion for Summary Judgment

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Further, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Unsubstantiated assertions, improbable inferences, and

7

unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 175 (5th Cir. 2000).

### C. Report and Recommendations

The Federal Rules of Civil Procedure authorize magistrate judges to make findings and recommendations for dispositive motions. Fed. R. Civ. P. 72(b)(1). For dispositive motions, parties are entitled to de novo review of any part of a magistrate judge's report and recommendation that has been properly objected to. *Id.* at (b)(3). A party may serve and file specific, written objections to a magistrate judge's findings and recommendations within fourteen days after being served with a copy of the report and recommendation and, in doing so, secure de novo review by the district court. 28 U.S.C. § 636(b)(1)(C). Because Plaintiffs timely objected to the report and recommendation, the Court reviews the report and recommendation de novo.

### III. DISCUSSION

For the purposes of the pending motions, there are three core questions: (1) should claims against USCGIM—who has already defaulted in arbitration—be dismissed for arbitration; (2) should claims against the USCP Defendants—who have not yet arbitrated this case—be dismissed for arbitration; and (3) if the USCP Defendants are sent to arbitration, should the claims against USCGIM proceed? For the reasons discussed below, the Court finds that the claims against the

8

USCP Defendants remain subject to the arbitration agreement, that USCGIM may no longer invoke arbitration, and that the claims against USCGIM should be allowed to proceed.

### A. The Claims Against USCGIM

The report and recommendation suggests that "all of Plaintiffs' claims in this suit be dismissed because those claims must be arbitrated." (R. & R., Dkt. 105, at 21). It further recommends that the Court dismiss the motion for summary judgment as moot. (*Id.*). In their objections, Plaintiffs point out that this recommendation is overbroad, as USCGIM does not have a pending motion to dismiss. (Objs., Dkt. 106, at 2–3). And, as Plaintiffs further note, this Court has already denied USCGIM's motion to compel arbitration in an order that was affirmed by the Fifth Circuit. (*Id.* (citing *Noble Cap. II*, 31 F.4th at 336)).

In response, Defendants argue that claims against USCGIM should be sent to arbitration pursuant to the dismissal entered in the first case, which held that the parties' agreement compels arbitration for questions including arbitrability. (Defs.' Resp., Dkt. 107, at 2–4). This reasoning ignores the orders already entered and affirmed in this case, specifically rejecting the same argument made by USCGIM. (Order, Dkt. 23); *Noble Cap. II*, 31 F.4th. To restate what the Fifth Circuit has already affirmed, arbitration with USCGIM "has been had" and USCGIM may no longer invoke the arbitration clause to avoid litigating in federal court. *Noble Cap. II*, 31 F.4th at 336.

As an alternative, USCGIM contends that the claims should be barred by collateral estoppel. (Defs.' Resp., Dkt. 107, at 2–4); (R. & R., Dkt. 105, at 15–22). As the report and recommendation notes, collateral estoppel (or issue preclusion) applies when "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision." *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005) (en banc). In the context of offensive issue preclusion, courts may include a fourth element: (4) whether "there are no special circumstances that would render estoppel inappropriate or unfair." *See, e.g.*, *TQ Delta, LLC v.*

9

*CommScope Holding Co., Inc.*, No. 2:21-CV-00310-JRG, 2023 WL 2145502, at *3 (E.D. Tex. Feb. 21, 2023) (citing *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387 (5th Cir. 1998)). Here, USCGIM argues that issue preclusion applies because this Court, in *Noble Capital I*, held that the plaintiffs' claims against the USCP Defendants must be arbitrated—in other words, the question of arbitrability has been "previously adjudicated." The report and recommendation concludes that issue preclusion bars Plaintiffs' claims against USCGIM for the same reason that it bars claims against the USCP Defendants. (R. & R., Dkt. 105, at 15–22).

The Court disagrees that issue preclusion applies to Plaintiffs' arguments against arbitration. An essential element of issue preclusion is that the "*identical* issue was previously adjudicated." *Students for Fair Admissions*, 37 F.4th at 1089 n.16 (emphasis added). But here, the issues are not identical. The Fifth Circuit has ruled that "relitigation of an issue is not precluded unless the facts and the legal standard used to assess them are the same in both proceedings." *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005) (quoting *Southmark Corp. v. Coopers & Lybrand*, 163 F.3d 925, 932 (5th Cir. 1999)). "Issues of fact are not 'identical' or 'the same,' and therefore not preclusive, if the legal standards governing their resolution are 'significantly different.'" *Id.* In the first suit, the parties disputed whether the arbitration agreement covered the claims for fraud (among other counts), and the Court ruled that the question of arbitrability must be sent to an arbitrator to decide. *NCFM's First Suit*, No. 1:19-CV-01255-LY, (Order, Dkt. 27, at 10–14). Here, by contrast, the issue is whether USCGIM may still invoke the arbitration agreement given that it has already defaulted. (*See* Mot. Dismiss, Dkt. 83, at 13–17; Pls.' Resp., Dkt. 88, at 4; Def.'s Reply, Dkt. 90, at 2–4) (collectively discussing the effect of the USCGIM arbitration on USCP's arbitration agreement). The legal standards are "significantly different," as evinced by the Fifth Circuit's dismissal for arbitration in one suit and denial of arbitration in the other. Because the arbitration issues are not identical, Plaintiffs are not estopped from litigating their claims against USCGIM in district court.

Even if collateral estoppel was available as a defense by USCGIM, it has been waived. "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . estoppel . . . [and] res judicata." *Kariuki v. Tarango*, 709 F.3d 495, 508 (5th Cir. 2013) (quoting Fed. R. Civ. P. 8(c). "Under [FRCP 8(c)], res judicata, and hence collateral estoppel, is an affirmative defense which if not pled is considered waived." *Id.* (quoting *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 172 (5th Cir. 1985) (footnotes omitted)). USCGIM did not raise the topic in its motion to compel and stay proceedings. (Mot., Dkt. 8). Nor does USCGIM mention it in its answer. (Dkt. 29). And the Defendants' joint motion for summary judgment mentions estoppel *only in relation to the USCP Defendants*. (Mot. Summ. J., Dkt. 92, at 21). USCGIM could have raised res judicata in its motion to dismiss or answer, but it failed to do so. Having waived the defense, it cannot claim it now as a basis for dismissal. Accordingly, the Court finds no reason to dismiss USCGIM from this suit.

## B.  The Claims Against the USCP Defendants

The USCP Defendants' arguments for compelling arbitration are more convincing. Here, the USCP Defendants argue that Plaintiffs should be defensively estopped from contesting arbitration, while Plaintiffs argue that the USCP Defendants should be offensively estopped from compelling arbitration. Ultimately, the Court ends with the simple conclusion that, because Plaintiffs have not yet arbitrated the claims against the USCP Defendants, those claims must be sent to arbitration.

### 1. Defensive Claim Preclusion

The USCP Defendants argue that "res judicata bars the plaintiffs [sic] claims in their entirety." (Mot. Dismiss, Dkt. 83, at 8–9). Plaintiffs do not respond to this argument. (Pls.' Resp., Dkt. 88). Nonetheless, the claim preclusion defense is unwarranted. Claim preclusion applies only if "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the

merits; and (4) the same claim or cause of action was involved in both actions." *Test Masters Educ. Services, Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005) (quoting *Petro–Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004)). A necessary element of claim preclusion is that the claims "could have been raised in that action." *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).[3] But Noble Capital could not have raised its claims of waiver or estoppel in the first action because those claims are based on events that followed its lawsuit. Where a party has defaulted in arbitration, that party may not compel a subsequent arbitration. *See Youngs v. Haugh*, No. 4:08-CV-528-Y, 2009 WL 701013, at *3 (N.D. Tex. Mar. 18, 2009); *see also Tillman v. Tillman*, 825 F.3d 1069, 1072-74 (9th Cir. 2016); *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1294 (10th Cir. 2015); *Sink v. Aden Enters.*, 352 F.3d 1197, 1199 (9th Cir. 2003); *Freeman v. SmartPay Leasing, LLC*, 771 F. App'x 926, 934–35 (11th Cir. 2019); *Nadeau v. Equity Residential Props. Mgmt. Corp.*, 251 F. Supp. 3d 637, 643 (S.D.N.Y. 2017). This well-established rule would have no effect if a party could re-compel arbitration by simply arguing for claim preclusion.[4]

---

[3] Defendants argue that claim preclusion applies because the Court's first order compelling arbitration dismissed the claims "with prejudice." (Mot. Dismiss, Dkt. 83, at 9–11 (citing *NCFM's First Suit*, No. 1:19-CV-01255-LY (R. &. R., Dkt. 27))). Because dismissals with prejudice are generally considered to be "final judgments on the merits," they contend that res judicata applies. (*Id.* (citing *Brooks v. Raymond Dugat Co. L C*, 336 F.3d 360, 362 (5th Cir. 2003))). While the Court dismissed the case so that it would be brought in arbitration, it did not bar Noble Capital from seeking to litigate its claims under any circumstance. By compelling arbitration, the Court clearly allowed Noble Capital to pursue those claims in arbitration, and did not bar it from doing so by having rendered a "final judgment on the merits." Nor did it foreclose the possibility of re-litigating in district court. For example, if the arbitrator determined that the arbitration clause was unenforceable, then the order contemplated Noble Capital being allowed to re-file in district court. *NCFM's First Suit*, No. 1:19-CV-01255-LY (R. &. R., Dkt. 27). And the Fifth Circuit's second opinion in this case clearly contemplates allowing claims to proceed after defaulting in arbitration, even if it has previously found a valid arbitration agreement. *Noble Cap. II*, 31 F.4th at 336.

[4] Even assuming that the dismissal with prejudice was a final judgment on the merits, it still falls under an exception for claim preclusion. The Fifth Circuit has held that jurisdictional dismissals are "insufficient to serve as final judgments on the merits." *Oreck*, 560 F.3d at 401 n.2 (citing *Miller v. Nationwide Life Ins. Co.*, No. 06–31178, 2008 WL 3086783, at *5 (5th Cir. Aug. 6, 2008)). While the first suit's order compelling arbitration did not state whether it was jurisdictional, the Fifth Circuit has held that "a district court lacks subject matter jurisdiction over a case and should dismiss it pursuant to Federal Rule of Civil Procedure 12(b)(1) when the parties' dispute is subject to binding arbitration." *Gilbert v. Donahoe*, 751 F.3d 303, 306 (5th Cir. 2014) (citing *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781, 787 (5th Cir. 2012)). Regardless of whether dismissals to arbitration are strictly jurisdictional, the same reasoning applies—the Court is not rendering a final judgment

Here, a core component of Plaintiffs' amended complaint is that the USCP Defendants have foregone their right to arbitrate because of USCGIM's default. (Am. Compl., Dkt. 40, at 17–19, 24–28). And much of that claim centers on the notion that the USCP Defendants "orchestrated the termination" of the arbitration to avoid a final judgment. (*Id.* at 24). Plaintiffs are entitled to make the argument that this constituted waiver and that further arbitration should be collaterally or equitably estopped. (Pls.' Resp., Dkt. 68, at 7–12).[5] Those arguments rely on new facts not previously available to Plaintiffs and that could not have been raised in the prior case. Though the Court ultimately finds these arguments unavailing as to the USCP Defendants, they are not altogether barred under res judicata.

2. Defensive Issue Preclusion

The USCP Defendants also argue that issue preclusion applies, and this argument is at least partially successful. The report and recommendation states that issue preclusion bars Plaintiffs from contesting arbitration, and that the Defendants should be dismissed accordingly. (R. & R., Dkt. 105, at 15–22). While the Court agrees that collateral estoppel bars Plaintiffs from relitigating identical issues, this doctrine does not bar Plaintiffs from raising new issues were not previously addressed.

An essential element of issue preclusion is that "the identical issue was previously adjudicated." *Pace*, 403 F.3d at 290. In response to the motions to dismiss, Plaintiffs raise three main issues: (1) whether the USCP Defendants have waived their right to arbitrate because of USCGIM's default, (2) whether the USCP Defendants are collaterally estopped from invoking arbitration because their subsidiary defaulted, and (3) whether the arbitration agreement should be held

---

on the merits of the case, but "classify[ing] that action, whatever its merits, as one on which the court concerned cannot speak" until arbitration has ended. *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 562 (5th Cir. 1983).

[5] To hold otherwise would entirely foreclose a plaintiff from ever resolving claims against a defendant, because the defendant could perpetually avoid litigation by compelling arbitration, defaulting in that arbitration, and then compelling arbitration again on the basis of claim (or issue) preclusion. This cannot be the law.

unenforceable due to fraud. (Pls.' Resp., Dkt. 88). The first two issues could not have been raised in the first suit against the USCP Defendants because USCGIM had not yet defaulted in arbitration. Having not been raised at all, Plaintiffs' first two arguments in this litigation are not identical to those addressed in Noble Capital's first suit. *Compare* (Pls.' Resp., Dkt. 88 (discussing estopped, waiver, and fraud)) *with NCFM's First Suit*, No. 1:19-CV-01255-LY, (Pls.' Resp., Dkt. 15) (discussing only enforceability of arbitration agreement induced by fraud). Issue preclusion does not bar Plaintiffs' arguments on waiver and estoppel.

Finally, Plaintiffs argue that they should not be forced to arbitrate their claims against the USCP Defendants because those arbitration agreements were procured by fraud. (Pls.' Resp., Dkt. 88, at 15–17). Here, unlike all other asserted uses of preclusion by the parties, issue preclusion actually does apply to this argument. In the previous case, the Court already addressed the issue of the arbitrability of fraud claims, and held that those claims must be arbitrated. *See NCFM's First Suit*, No. 1:19-CV-01255-LY, (R. & R., Dkt. 27, at 10–12 ("Accordingly, the question of the Arbitration Agreements' validity is for the arbitrator to decide, not this Court.")). In that case, the Court held that because "Plaintiffs' fraudulent inducement claim focuses on the Arbitration Agreements as a whole, rather than the delegation clauses in particular . . . Plaintiffs' enforceability challenges must be sent to the arbitrator." *Id.* In this case, Plaintiffs *do* challenge the delegation clause specifically, in addition to the enforceability of the arbitration agreement as a whole. (Pls.' Resp., Dkt. 88, at 16–17).

However, while a challenge to the delegation clause may have defeated arbitration in 2019, it is now barred by issue preclusion. The first, third, and fourth elements of preclusion are clearly met. *Pace*, 403 F.3d at 290. The parties are the same (or in privity with the same parties), the issue of arbitrability was litigated, and the determination was necessary to the decision to dismiss the case to arbitration. *Noble Cap. I*, 2021 WL 3477481, at *3. The only question remaining is whether the issues

14

raised by Plaintiffs here are identical to those addressed by this Court (and the Fifth Circuit) in 2019. "Determining whether two issues are identical for purposes of collateral estoppel often is a difficult question." *Resol. Tr. Corp. v. Keating*, 186 F.3d 1110, 1116 (9th Cir. 1999) (quoting Charles Alan Wright, Law of Federal Courts § 100A, at 724 n.32 (5th ed.1994)). The Fifth Circuit has ruled that "relitigation of an issue is not precluded unless the facts and the legal standard used to assess them are the same in both proceedings." *Pace*, 403 F.3d at 290. "Issues of fact are not 'identical' or 'the same,' and therefore not preclusive, if the legal standards governing their resolution are 'significantly different.'" *Id.*

The applicable substantive legal standard derives from the Supreme Court's holding in *Rent-a-Center, West, Inc. v. Jackson*, which held that parties must arbitrate gateway questions unless a party "challenges specifically" the delegation clause. 561 U.S. 63, 70 (2010); *Hengle v. Treppa*, 19 F.4th 324, 336 (4th Cir. 2021) ("Plaintiffs here have specifically challenged the validity of the delegation clause—and the arbitration provision as a whole . . . [s]o we must assess the enforceability of the delegation clause."); *see also Noble Cap. I*, 2021 WL 3477481, at *3 (discussing *Rent-a-Center*). The *Rent-a-Center* legal standard remains the same, regardless of whether Plaintiffs invoke the delegation clause or not. There is no significant difference in the legal analysis simply because Plaintiffs have now presented an argument that would allow their claims to potentially avoid arbitration when that argument could have first been raised in the first round of litigation. "Issue preclusion . . .bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). Because the issue presented by Plaintiffs is the same as the one previously litigated, the validity of the delegation clause must be determined by an arbitrator.

3. Offensive Issue Preclusion

In addition to the Defendants' various preclusion claims, Plaintiffs also raise an offensive claim of issue preclusion. Plaintiffs argue that collateral estoppel prohibits the USCP Defendants from "relitigating issues between the parties or parties in privity with them." (Pls.' Resp., Dkt. 88, at 7). Essentially, Plaintiffs seek to extend the Fifth Circuit's order denying USCGIM's motion to compel to *all* the Defendants in this case, not just USCGIM. (Pls.' Resp., Dkt. 88, at 4–5). But when the Fifth Circuit concluded that arbitration "has been had," it did so in an appeal filed by USCGIM—and USCGIM only. *Noble Cap. II*, 37 F.4th at 336. The USCP Defendants were not yet added to this litigation, and the Fifth Circuit's opinion does not analyze their ability to invoke the arbitration agreement separately from USCGIM.

Even assuming that the Defendants are indeed in privity and that the USCP Defendants are collaterally estopped from relitigating previous issues, it does not follow that they can no longer invoke their own arbitration clause simply because USCGIM cannot invoke its arbitration clause. The Supreme Court's decision in *Taylor v. Sturgell* is instructive. 553 U.S. at 892–93. In that case, the Supreme Court held that "A person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit."[6] *Id.* The application of claim and issue preclusion to nonparties thus runs up against the 'deep-rooted historic tradition that everyone should have his own day in court.'" *Id.* (citing *Richards v. Jefferson Cnty., Ala.*, 517 U.S. 793, 798 (1996). In that case, the Supreme Court rejected the notion of "virtual representation" by parties in privity that might justify non-party estoppel.[7] *Id.* Collateral estoppel may prevent the USCP Defendants from arguing that the claims against *USCGIM* must be arbitrated. But the issue of the

---

[6] The *Taylor v. Sturgell* decision included six categories of exceptions to this rule, none of which apply here.
[7] The Supreme Court also noted that "a diffuse balancing approach to nonparty preclusion would likely create more headaches than it relieves"—a concept perfectly illustrated by the parties' cross-motions for preclusion.

16

USCP Defendants' arbitrability following USCGIM's default was not previously decided in this case, and the USCP Defendants are not precluded from seeking to compel arbitration.

### 4. Waiver of Arbitration

Next, Plaintiffs argue that the USCP Defendants "assented to the JAMS arbitration proceedings" by failing to object to the arbitration. (*Id.* at 9–11). In general, however, a "waiver of arbitration is a disfavored finding . . . ." *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009). Plaintiffs cite several cases finding waivers of arbitration by defendants where the defendant defaulted in arbitration or otherwise engaged in conduct inconsistent with a desire to arbitrate. But each of those cases analyzes the defendant's own conduct in arbitration. (Pls.' Resp., Dkt. 88, at 9–11). Here, by contrast, Plaintiffs seek to establish the USCP Defendants' waiver based on the arbitration conduct of USCGIM—a separate Defendant. Plaintiffs cite no cases establishing a party's waiver based on the conduct of a separate party. (*Id.*). Accordingly, the Court finds that the USCP Defendants did not waive their right to arbitrate simply by being in privity with a party who defaulted.

Plaintiffs further argue that USCP, "as the parent company of a conglomeration of companies . . . of which USCGIM was a part of, was fully aware of the JAMS arbitration proceedings . . . and did not object to being named a respondent until November 30, 2022." (*Id.* at 5). But at the hearing, the USCP Defendants' roles in arbitration appeared to be limited to those of a witness, not a defendant. That arbitration, as best the parties' briefing indicates, involved only Plaintiffs, USCGIM, and the Fund (managed by USCGIM). The USCP Defendants have not yet had the opportunity to arbitrate the claims now brought against them. To the extent that the USCP Defendants failed to object to the arbitration, it is likely because they were not named as respondents in the proceedings. This Court is unaware of any precedent suggesting a party waives arbitration by failing to object to arbitration involving separate entities. Finally, even assuming the

17

question of waiver was valid, it would fall under the arbitration agreement's delegation clause, and therefore must first be determined by the arbitrator. *Noble Cap. I*, No. 1:19-CV-01255-LY, (Order, Dkt. 27, at 10–14). As a whole, the Court finds that the USCP Defendants have not waived their right to arbitrate.

### C. Whether to Stay the Case

#### 1. Should the Claims be Split Up

In short, the Court holds that Plaintiffs' claims against the USCP Defendants must be arbitrated while the claims against USCGIM may proceed in federal court. As Noble Capital argued at the Court's hearing, this means that the claims against some Defendants may proceed, while claims against others must be arbitrated. (Minute Entry, Dkt. 109). Because USCGIM appears to be the subsidiary of USCP, this would allow claims against the subsidiary to proceed but not those against the parent company. (*Id.*).[8]

At the Court's hearing, Noble Capital argued that the Court should not dismiss the USCP Defendants because it would be inefficient to allow parallel proceedings in both federal court and arbitration. (*Id.*). Noble Capital is right that this parallel litigation will be inefficient for all parties, but that inefficiency does not mean it is legally impermissible. A Fifth Circuit case is instructive:

> Appellants warn that permitting the district court's decision to stand means plaintiffs' claims will "be split into three proceedings—two arbitrations and one state court proceeding, an outcome the NOV Parties have tried to avoid since the outset of the case." This is an inevitable and permissible consequence where one of multiple defendants asserts a right to arbitrate. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 220–21 (1985) (noting that private arbitration agreements must be enforced even if the result is piecemeal or bifurcated litigation). If Appellants had truly prioritized their desire to try the case efficiently, they could have foregone arbitration.

---

[8] This argument assumes that Noble Capital will arbitrate its claims against the USCP Defendants, which itself is unclear given that Noble Capital never added them to arbitration after the first motion to compel arbitration was granted.

18

*Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 814 F.3d 300, 306 (5th Cir. 2016).

Here, the proceedings will be split into two: the claims against USCGIM will continue in this court while the claims against the USCP Defendants must be arbitrated. This is a direct result of the parties' decisions in this litigation. Noble Capital chose not to add the USCP Defendants to the original arbitration despite a Fifth Circuit ruling stating that those claims must be arbitrated. Defendants, for their part, are moving to compel arbitration for the USCP Defendants while the Court has already denied a similar motion for USCGIM. The bifurcated litigation may be inefficient, but it is a foreseeable and unavoidable consequence of the parties' litigation strategies.

### 2. Stay vs. Dismissal

Given that the USCP Defendants are entitled to arbitrate the claims against them, the Court finds that a stay, rather than outright dismissal, is more appropriate. Section 3 of the Federal Arbitration Act ("FAA") provides that a district court "shall stay" proceedings pending arbitration. 9 U.S.C. § 3. Still, dismissal may be appropriate where all the issues raised in the district court must be submitted to arbitration. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). It is doubtful that "all of the issues" here must be arbitrated, as Plaintiffs' claims against USCGIM have already been arbitrated and may now proceed. But even treating the claims against the USCP Defendants separately, dismissal is a matter of discretion, not obligation. *See Apache Bohai Corp., LDC v. Texaco China, B.V.*, 330 F.3d 307, 310 n.9 (5th Cir. 2003); *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 676 (5th Cir. 1999) (holding that "district courts have discretion to dismiss cases in favor of arbitration" but not implying any obligation to do so). Given that many claims against the USCP Defendants are related to those proceeding claims, it is unnecessary to dismiss those Defendants altogether. Accordingly, the Court will exercise its discretion and stay the claims against the USCP Defendants.

3. The Pending Motion for Summary Judgment

Finally, the Court turns to Defendants' joint motion for summary judgment. (Dkt. 92). USCGIM and the USCP Defendants filed the motion jointly, which seeks summary judgment on the merits of Plaintiffs' claims. (*Id.*). Because the claims against USCGIM may proceed while those against the USCP Defendants must be arbitrated, the Court will moot the motion to allow USCGIM to refile its motion. If the motion is denied and arbitration is still pending, Noble Capital may file a motion to sever its claims (or voluntarily dismiss the USCP Defendants) to allow its claims against USCGIM to go to trial.

## IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that the USCP Defendants' motions to dismiss and/or compel arbitration, (Dkts. 64, 69, 83, 89), are **GRANTED IN PART**. Specifically, the Court will compel arbitration of all claims against the USCP Defendants, but stay, rather than dismiss, the claims.

In light of the stay, **IT IS FURTHER ORDERED** that the motion for summary judgment, (Dkt. 92), is denied as **MOOT**. Defendant USCGIM may refile a standalone motion for summary judgment within 60 days of the date of this order.

**IT IS FURTHER ORDERED** that Defendants' motion to extend scheduling order deadlines, (Dkt. 67), is denied as **MOOT**.

**IT IS FINALLY ORDERED** that the report and recommendations, (Dkt. 105), are **ADOPTED IN PART**.

**SIGNED** on June 22, 2023.

_____

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE